**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALIBAY BARKLEY, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| vs. | ) | |
| | ) | |
| LEHIGH AND NORTHAMPTON | ) | |
| TRANSPORTATION AUTHORITY | ) | |
| a/k/a LANTA; | ) | |
| THOMAS A. BETZLER, SR., individually | ) | |
| and as a Bus Driver for LANTA; | ) | |
| JOHN DOE SECURITY OFFICER, | ) | |
| individually and as Security | ) | |
| Officer for LANTA; | ) | |
| CITY OF ALLENTOWN; | ) | |
| EDWIN PAWLOWSKI, individually | ) | |
| and in his official capacity as Mayor of the | ) | |
| City of Allentown; | ) | |
| ALLENTOWN POLICE DEPARTMENT; | ) | |
| KEITH A. MORRIS, individually and | ) | |
| in his official capacity as the former | ) | |
| Chief of the Allentown Police Department; | ) | |
| ROBERT BUSCH, individually and in his | ) | |
| official capacity as a member of the | ) | |
| Allentown Police Department; | ) | |
| ZACHARY THOMAS WITTMAN, individually | ) | |
| and in his official capacity as a member of the | ) | |
| Allentown Police Department; and | ) | |
| APD DOES 1-10, individually and in | ) | |
| their official capacities as members of the | ) | |
| Allentown Police Department. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, ALIBAY BARKLEY ("Plaintiff" or "Barkley"), by and through his

undersigned counsel, John E. Kotsatos, Esquire of Kotsatos Law, PLLC and Mark L. Minotti,

Esquire, files this Complaint against Defendants, Lehigh and Northampton Transportation

Authority a/k/a LANTA ("LANTA"), Thomas A. Betzler, Sr. ("Bus Driver" or "Betzler"), John

Doe Security Officer ("Security Officer" or "LANTA Security Officer" or "LSO"), the City of Allentown ( "City" or "Allentown" or "City of Allentown"), Edwin Pawlowski, individually and in his official capacity as Mayor of the City of Allentown ("Mayor Pawlowski" or "Pawlowski"), the Allentown Police Department ("APD" or "Department"), Chief Keith A. Morris, individually and in his former official capacity as Chief of the Allentown Police Department ("Chief Morris" or "Morris"), Robert Busch, individually and in his official capacity as a member of the Allentown Police Department ("Officer Busch" or "Busch"), Zachary Thomas Wittman, individually and in his official capacity as a member of the Allentown Police Department ("Officer Wittman" or "Wittman"), AP Does 1-10, individually and in their official capacities as members of the Allentown Police Department ("APDoes 1-10" or "APDoes" and *collectively* with LANTA, Betzler, LANTA Security Officer, City of Allentown, Mayor Pawlowski, Chief Morris, Busch and Wittman "Defendants"),  jointly and severely.  Plaintiff avers as follows:

## **INTRODUCTION**

1.      This is an action brought by Alibay Barkley, an African-American man, to vindicate profound deprivations of his constitutional rights caused by race.

2.      On August 18, 2016, the Bus Driver falsely accused Mr. Barkley of freeloading; boarding a LANTA bus without obtaining a bus ticket and/or paying the required fee to ride the bus.

3.      During the course of this false accusation, both a LANTA Security Officer and the Allentown Police Department were summoned to confront Mr. Barkley who was innocuously seated in the Rosa Parks seat for a long, uninterrupted period of time, after using his "All-Day Bus Pass" to board the bus, in the immediate and almost exclusive presence of the very same Bus Driver who falsely accused and racially tattooed Mr. Barkley as a freeloader.

2

4.      In addition to being publicly mocked as a thief and a freeloader by the Bus Driver, the LANTA Security Officer further ridiculed Mr. Barkley, by mischaracterizing him as an unhygienic individual too dirty to be touched.

5.      Instead using reasonableness to diffuse the situation, the Allentown Police Department did quite the opposite.  Allentown Police Officers heinously tased and unlawfully manhandled Plaintiff to forcibly remove him from the Rosa Parks seat where Mr. Barkley had peacefully and quietly sat before the onslaught of racial discrimination.

6.      During the unlawful manhandling, the repetitive sounds of the taser gun were followed by an all-out swarm of Allentown Police Officers in their excessive attempt to incite an unwarranted melee with Mr. Barkley who, by that time, had already been unjustly detained and handcuffed, physically harmed and emotionally scarred by the egregious racial discrimination which had been manifested by the Bus Driver, the LANTA Security Officer and the Allentown Police Officers.

7.      Instead of intervening to abate or deescalate the unnecessary actions of the other active discriminatory participants, the Allentown Police Department enhanced the public display of racial mockery and excessive force manifested towards Mr. Barkley for no just reason.

8.      Subsequent to being removed from the bus by an array of Allentown Police Officers, Officer Busch, the chief taser of the bunch, withdrew Mr. Barkley's wallet from an evidence bag and proceeded to destroy the Plaintiff's "All-Day Bus Pass"; the most vital form of exculpatory evidence which would have immediately exonerated Mr. Barkley from the false accusations and criminal charges raised and asserted against him on that public bus on that day.

9.      In concert or by conspiracy, Defendants harmed Mr. Barkley by racially discriminating him, causing him physical bodily injury and humiliating him in public.

10.    In further concert or in furtherance of their conspiracy, Defendants maliciously and

baselessly prosecuted Mr. Barkley for Theft of Services, Resisting Arrest and Disorderly

Conduct.  After enduring criminal court proceedings on 2 separate and distinct occasions, Mr.

Barkley was fully exonerated of all criminal charges which had been falsely and maliciously

asserted against him.

11.    In light of the wanton and egregious conduct manifested by the Defendants towards

Plaintiff on the day of the incident as well as thereafter, Mr. Barkley has had his federally

protected rights trampled upon and thoroughly violated, he has suffered bodily injury and he has

sustained damages as a result thereof.

## JURISDICTION AND VENUE

12.    This action arises under the Constitution and laws of the United States, including Article

III, Section 1 of the United States Constitution, and is brought under and pursuant to 42 U.S.C.

§§1981, 1983, 1985, 1986, 1988.

13.    The Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343,

1367, 2201; encompassing all questions, matters, issues and claims prescribed herein.

14.    Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b) since all subject

matter events or omissions occurred in this judicial district court and/or the Defendants reside

and/or maintain offices in said district.

## PARTIES

15.    At all times material hereto, Plaintiff Alibay Barkley was a citizen of the United States of

America and a resident of the Commonwealth of Pennsylvania, residing at 49 N. Second Street,

Coplay, Lehigh County, PA 18037.

16.    Defendant, Lehigh and Northampton Transportation Authority a/k/a LANTA

("LANTA") is an agency duly organized and existing under and by virtue of the laws of the

Commonwealth of Pennsylvania and is registered with the Pennsylvania Department of State

under the following entity number: 202562.  LANTA does business in the Commonwealth of

Pennsylvania, including but not limited to throughout Lehigh County, Pennsylvania.  LANTA

has a business address at: 1060 Lehigh Street Allentown, Lehigh County, Pennsylvania 18103.

17.    LANTA has received and continues to receive federal funding and assistance for the

continuing operation of its public transportation services.  Federal funding is distributed by the

U.S Department of Transportation and the monies are disbursed to LANTA via the U.S. Federal

Transit Administration.  On July 26, 2016, LANTA announced its proposed Federal Fiscal Years

(FFY) 2017 through 2019 goal of 5.28 percent of applicable federal funds for Disadvantaged

Business Enterprise (DBE) participation as follows: $1,187,420 in FFY 2017; $1,055,420 in FFY

2018; and $615,420 in FFY 2019.

18.    On February 4, 2014, LANTA announced designation of the Rosa Parks seat through the

following public announcement:

>    "**ROSA PARKS REMEMBERED** (emphasis on original)
>
>    As Black History month begins, the Allentown Chapter of the NAACP,   the
>    Liberty Bell Museum of Allentown and the LANTA Authority Board of Directors
>    have joined forces to honor Rosa Parks in a very special way on the 101st
>    anniversary of her birth. LANTA has designated a "Rosa Parks seat" on each of
>    the 86 buses in its fleet at a dedication ceremony held earlier today, Tuesday,
>    February 4 at the LANta terminal at 1:00 p.m. Then officers, employees and
>    dignitaries "rode with Rosa" to the Liberty Bell Museum in Allentown for the
>    reception opening the museum's winter exhibit, "From the Bell to the Bus and
>    Beyond: Rosa Parks."
>
>    On each LANta bus above the seat bearing a plaque, an explanatory placard
>    features Rosa Parks' picture and a note stating "The seat located below this sign is
>    dedicated to the memory of Rosa Parks. Her refusal to move from a bus seat in
>    Montgomery, Alabama, in 1955 sparked a bus boycott and helped usher in the

civil rights movement, changing public transportation and American society. As you sit here, remember her."

The Liberty Bell Museum exhibit traces the civil rights movement back through time to the civil war, when abolitionists first began to call the iconic bell, the Liberty bell. Moving forward in time, the exhibit shows how, following the abolition of slavery, the development of Jim Crow laws necessitated the modern civil rights movement. Rosa Parks's story emerges from this background, then raises questions about the issue of racial justice today.

The museum exhibit also features an actual seat from a LANta bus where you can sit and ponder Rosa Parks' action, then think about contemporary issues. There also is a section about Martin Luther King, Jr. as well as the relationship between the Liberty Bell and the Bible.  The exhibit will run through May.

19.    LANTA, as employer of Betzler and LANTA Security Officer, is a proper entity to be sued under 42 U.S.C. §1983.

20.    At all times material hereto, LANTA, acted through its owners, officers, agents, ostensible agents, servants, and/or employees, all whom were acting within the course and scope of their employment and/or authority for and on the business of LANTA, and under its control or right of control.

21.    Defendant Thomas P. Betzler, Sr. ("Bus Driver" or "Betzler"), is an adult individual and is the person operating the LANTA bus where the subject discrimination and/or other occurrences and/or other transactions occurred on August 18, 2016 ("8/18/16" or "date of incident").  It is believed that the aforementioned bus was known as LANTA Bus #0467 or "211", however, the specific identity of the subject bus is known only to LANTA and may only be confirmed through discovery.

22.    Betzler falsely accused and branded Mr. Barkley as a freeloader.

23.    Betzler precipitated and, ultimately, sanctioned the removal of Mr. Barkley from the bus.

24.    At all times material hereto, Betzler (Bus Driver) was wearing his LANTA bus driver's uniform.

25.     At all times material hereto, upon information and belief, Betzler was the agent, ostensible agent, servant, and/or employee of Defendant LANTA and was acting within the course and scope of his employment and/or authority for and on the business of LANTA and under its control or right of control.

26.     The specific identity of Betzler was confirmed, through his own testimony, on December 6, 2016 in a criminal proceeding held before Commonwealth of Pennsylvania Magisterial Judge Karen C. Devine which was docketed in the local district as MJ-31201-CR-0000395-2016 and bearing OTN# X042506-2 (identified below as: "First Malicious and Wrongful Prosecution").

27.     Defendant John Doe Security Officer ("Security Officer" or "LANTA Security Officer" or "LSO") is believed to be an adult individual who was summoned and present on the LANTA bus on August 18, 2016 where the subject matter of the matters herein occurred.  The specific identity of Defendant John Doe Security Officer is known only to LANTA and may only be obtained through discovery.

28.     Like the Bus Driver, the LANTA Security Officer falsely accused and branded Mr. Barkley as a freeloader.

29.     LANTA Security Officer directed the false arrest of Mr. Barkley.

30.     At all times material hereto, LANTA Security Officer was wearing his LANTA security uniform.

31.     At all times material hereto, the LANTA Security Officer was the agent, ostensible agent, servant, and/or employee of LANTA and was acting within the course and scope of his employment and/or authority for and on the business of LANTA and under its control or right of control.

32.     LANTA, the Bus Driver and the LANTA Security Officer, their employees and agents, participated personally in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise, failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiff.  The Bus Driver and LANTA Security Officer acted in concert with each other and in conjunction with members of the Allentown Police Department to intentionally deprive Mr. Barkley of his rights.  The challenged acts caused the violation of Plaintiff's rights.

33.     As used herein "LANTA Defendants" includes and/or refers to LANTA, Betzler and LANTA Security Officer.

34.     Defendant City of Allentown ("City" or "Allentown" or "City of Allentown") is a municipal corporation which is registered with the Pennsylvania Department of State under the following entity number: 8416.  The City of Allentown is a city of the third class and governmental entity within the Commonwealth of Pennsylvania.  The City of Allentown is empowered to establish, regulate and control the its police department for the enforcement of its laws and ordinances within its jurisdiction, and for the purpose of protecting and preserving the persons, property and the Constitutional rights of individuals within the geographical and legal jurisdiction of the City of Allentown.  The City of Allentown is the legal entity responsible for itself and for the Allentown Police Department.

35.     The City of Allentown, as employer of Mayor Pawlowski, Chief Morris (former police chief), Officer Busch, Officer Wittman and APDoes, is a proper entity to be sued under 42 U.S.C. §1983.

36.     The City of Allentown is properly sued under 42 U.S.C. §1983 for the challenged delegated decisions of Defendant Edwin Pawlowski in his official capacity as the Mayor of the

City of Allentown, Defendant Keith A. Morris in his official capacity as the former Chief of the Allentown Police Department, and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, protocols, widespread habits, customs, usages and practices.

37.     Defendant Edwin Pawlowski ("Mayor Pawlowski" or "Pawlowski") is a citizen of the United States, a resident of the Commonwealth of Pennsylvania, the Mayor of the City of Allentown and in supervision of the Allentown Police Department.

38.     At all times material hereto, as direct supervisor of the Allentown Police Department, Mayor Pawlowski exercised and/or delegated his responsibilities and decision making power to his former police chief, Chief Morris and other members of the Department.

39.     At all times material hereto, Mayor Pawlowski, either through exercise or delegation, was responsible for formulating and/or implementing the practices, protocols, policies, customs and procedures, as well as the day-to-day operation, including command and control, of the Allentown Police Department, its officers, its units and all of its functioning segments.

40.     Defendant Allentown Police Department ("APD" or "Department") is the fictitious, unregistered name of the law enforcement entity of the City of Allentown, including any and all of its members, sworn and unsworn, agents and ostensible agents.  The APD has a business address at 425 Hamilton Street, Allentown, Lehigh County, PA 18101.

41.     Defendant Keith A. Morris ("Chief Morris" or "Morris") is a citizen of the United States, a resident of the Commonwealth of Pennsylvania and is the former Police Chief of the Allentown Police Department[1].

---

[1] According to public record, the resignation of Chief Morris from the Allentown Police Department became official on 4/21/17.

42.     At all times material hereto, Chief Morris exercised and/or delegated his responsibilities and decision making power to other members of the Allentown Police Department.

43.     At all times material hereto, Chief Morris, along with Mayor Pawlowski, either through exercise or delegation, was responsible for formulating and/or implementing the practices, protocols, policies, customs and procedures, as well as the day-to-day operation, including command and control, of the Allentown Police Department, its officers, its units and all of its functioning segments.

44.     Defendant Robert Busch (Officer Busch" or "Busch") is an adult individual who, at times material hereto, was serving his capacity as a police officer of the Allentown Police Department. Officer Busch is an employee of the City of Allentown who was on site and who in concert with Officer Wittman and the APDoes, orchestrated the false arrest of Plaintiff.  Officer Wittman, in concert with Officer Busch and the APDoes, directed the unlawful seizure and destruction of Plaintiff's property which formulated the basis for false criminal charges to be asserted against Plaintiff.

45.     At all times material hereto, Officer Busch was wearing his APD uniform with his badge and his guns in plain view.

46.     Defendant Zachary Thomas Wittman ("Officer Wittman" or "Wittman"), is an adult individual who, at times material hereto, was serving his capacity as a police officer of the Allentown Police Department.  Officer Wittman is an employee of the City of Allentown who was on site and who in concert with Officer Busch and the APDoes, orchestrated the false arrest of Plaintiff.  Officer Wittman, in concert with Officer Busch and the APDoes, directed the unlawful seizure and destruction of Plaintiff's property which formulated the basis for false criminal charges to be asserted against Plaintiff.

47.     At all times material hereto, Officer Wittman was wearing his APD uniform with his badge and guns in plain view.

48.     Defendants AP Does 1-10 ("APDoes 1-10" or "APDoes") are individuals who, at times material hereto, purported, by color of uniform, to serve in their capacities as police officers of the Allentown Police Department.  The APDoes were on site and who in concert with Officers Busch and Wittman, orchestrated the false arrest of Plaintiff.  APDoes, in concert with Officers Busch and Wittman, directed the unlawful seizure and destruction of Plaintiff's property which formulated the basis for false criminal charges to be asserted against Plaintiff.

49.     The specific identifies and capacities Defendants AP Does 1-10 are presently unknown to Plaintiff, and on this basis, Plaintiff sues these defendants by fictitious names. Plaintiff will amend his Complaint to substitute the true names and capacities of the AP DOE 1-10 defendants when obtained. Plaintiff is informed, believes, and thereon alleges that AP Does 1-10 are, and were at all times material hereto, employees and/or agents of the City of Allentown, by and through the Allentown Police Department, and are responsible for the acts and omissions complained of herein. AP Does 1-10 are sued in both their official and individual capacities.

50.     At all times material hereto, the APDoes were all wearing their APD uniforms with badges and guns in plain view.

51.     City of Allentown, Mayor Pawlowski, APD, Chief Morris, Officer Busch, Officer Wittman and AP Does 1-10, their employees and agents, participated personally in the unlawful conduct challenged herein and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise, failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Plaintiff.  Officer Busch, Officer Wittman and the APDoes acted in concert with each other and in conjunction with the Bus

Driver and the LANTA Security Officer to intentionally deprive Mr. Barkley of his rights. The challenged acts caused the violation of Plaintiff's rights.

52.     As used herein "Allentown Defendants" includes and/or refers to City of Allentown, Mayor Pawlowksi, APD, Chief Morris, Officer Busch, Officer Wittman and APDoes.

## FACTUAL ALLEGATIONS

53.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

### Purchase of All-Day Bus Pass on Morning of 8/18/16

54.     On the morning of August 18, 2016 (date of incident), Mr. Barkley purchased a LANTA All-Day Bus Pass upon boarding the LANTA bus (f/k/a LANTA Route 219) at the LANTA bus stop located at Second and Chestnut Streets in Coplay, PA.

55.     More specifically, Mr. Barkley purchased his LANTA "Day Pass" by inserting Four Dollars ($4.00) cash into the farebox upon boarding the LANTA bus at or around 8:50 am.

### Regular and Frequent LANTA Bus Passenger

56.     The LANTA bus stop located at Second and Chestnut Streets in Coplay, PA is situated approximately 131 feet from Mr. Barkley's home (49 N. Second Street, Coplay, PA 18037).

57.     Prior to the date of incident, Mr. Barkley was a regular and frequent LANTA bus passenger and he would commence his bus travels from the Second and Chestnut Street bus stop given its proximity to his home. In doing so, Plaintiff would purchase a $4.00 All-Day Bus Pass[2] upon boarding the LANTA bus so he could travel indefinitely throughout the day. When available, Mr. Barkley enjoyed sitting in the Rosa Parks seat of the LANTA bus.

---

[2]At all times material hereto, LANTA marketed its All-Day Bus Pass as follows: "[p]rovides unlimited rides on the day it is first used in a LANta farebox."

**Morning of 8/18/16 – Going to the Hospital**

58.     The All-Day Bus Pass which Mr. Barkley purchased on the morning of August 18, 2016 was no different than any other.  He boarded the LANTA bus at the Second and Chestnut Street bus stop at approximately 8:50 am to go to his 10:30 am doctor's appointment at medical offices located at Lehigh Valley Hospital – Cedar Crest Blvd ("Hospital").

59.     Taking the bus to the Hospital was not a first occurrence.  In fact, Mr. Barkley knew that the most efficient LANTA bus route to the Hospital included making transfer stops at the Lehigh Valley Mall Transfer Center as well as at the Allentown Transfer Center.

60.     Upon arriving at the Lehigh Valley Mall Transfer Center at or around 9:15 am, Mr. Barkley then boarded a LANTA Bus (f/k/a LANTA Route 103) headed in the direction of the LANTA Allentown Transfer Center located at 110 N 6th Street, Allentown, PA ("ATC").

61.     Subsequent to arriving at the ATC, Plaintiff, at approximately 10:05am, then transferred and boarded a LANTA bus headed in the direction of the Hospital (f/k/a LANTA Route 102). Upon timely arrival at the Hospital, Mr. Barkley attended his doctor's appointment.

**Late Morning of 8/18/16 – Picked Up from the Hospital**

62.     After his doctor's appointment, at approximately 11:40am, Mr. Barkley waited at the Hospital bus stop for LANTA Bus #0467 so he could begin his commute back home.  Mr. Barkley was the only person waiting at the Hospital's bus stop.

63.     When the bus arrived, at approximately 11:45am, Mr. Barkley, all alone, boarded the bus and scanned his All-Day Bus Pass in the farebox located within inches of the Bus Driver's steering wheel.

64.     Contemporaneously with the farebox beeping (signaling acceptance of his swiped All-Day Bus Pass), the Bus Driver ("Betzler") acknowledged and verbally gestured "Hey buddy" to Mr. Barkley.

**Rosa Parks Seat**

65.     After swiping his All-Day Bus Pass and being acknowledged by the Bus Driver, Mr. Barkley sat down in the Rosa Parks seat to enjoy his ride back home.

66.     On LANTA Bus #0467, the Rosa Parks seat where Plaintiff was seated was situated almost directly behind the bus driver's seat with only a three-person vertically aligned bench separating the Bus Driver from Mr. Barkley.

67.     Aside from there being only 4 other passengers in the back section of LANTA Bus #0467, there were no other passengers seated in between the Bus Driver and Mr. Barkley.  In fact, for approximately 20 minutes, the Bus Driver (sitting in his bus driver's seat) and Mr. Barkley (sitting in his Rosa Parks seat) were almost exclusively the only individuals seated in the front part of the bus.

**Stop at the Allentown Transfer Center (ATC)**

68.     Upon the bus arriving at the Allentown Transfer Center ("ATC"), the Bus Driver stopped the bus in the designated parking area for LANTA buses.  While the bus was parked at the ATC, the Bus Driver allowed passengers to freely and voluntarily board and disembark from his bus.

69.     At approximately 12:08pm while still stopped at the ATC, a woman dressed in black boarded the bus and sat directly behind the Rosa Parks seat where Mr. Barkley was still seated. Both Mr. Barkley and the woman sat quietly while waiting for the bus to leave the ATC.

70.     At approximately 12:09pm, while the bus is still parked, the Bus Driver exited the bus to go to a Dunkin Donuts which is located within the ATC.

71.     Upon the Bus Driver disembarking, the following actions/inactions transpired:

      a.     Bus Driver closed the back door of the bus, however, the front door is left wide open;

      b.     Mr. Barkley continued sitting in the Rosa Parks seat, the same seat where he had initially sat down upon boarding the very same bus at approximately 11:45 am at the Lehigh Valley Hospital bus stop; and

      c.     Besides Mr. Barkley, there are now 9 other passengers on the bus.

72.     At approximately 12:11pm, while the Bus Driver is still absent from the bus, a female passenger boarded the bus ("12:11pm Female Passenger").  The 12:11pm Female Passenger appeared to swipe some type of card on the farebox and subsequently proceeded to sit down.

73.     Approximately three minutes later at 12:14pm, in order to glance at the other parked buses at the ATC, Mr. Barkley disembarked from the bus.  Mr. Barkley glanced to see whether he could take another bus since the Bus Driver was nowhere in sight (Plaintiff was looking for faster bus and/or bus route to return home quicker).  In doing so, the frame of Mr. Barkley's body did not exceed 4 feet from the front door of the bus and the duration of him stepping off the bus lasted approximately 30 seconds until the Bus Driver returned to the bus from the Dunkin Donuts.

74.     Upon the Bus Driver returning to the front door of the bus, Mr. Barkley asked the Bus Driver "we leaving?".  To which, the Bus Driver responded "Yeah" and stepped in front of Mr. Barkley to enter the bus to go back to his driver's seat.  After the Bus Driver boarded the bus, Mr. Barkley allowed a fellow male passenger to board before him and then gingerly returned to his Rosa Parks seat; the same seat where he had been sitting innocuously for approximately twenty (20) minutes from the time he had boarded the bus at the Hospital.

**False Freeloading Accusation– Bus Driver**

15

75.     While seated in his Rosa Parks seat, Mr. Barkley placed headphones in his ears and begin listening to music.  Upon doing so, the Bus Driver began making inquiries about Mr. Barkley paying his fare to ride his bus.

76.     At no time did the Bus Driver ever question the 12:11pm Female Passenger who boarded the bus while the Bus Driver was in Dunkin Donuts.  Despite this, the Bus Driver's freeloading interrogation was squarely pegged against Mr. Barkley; an individual whom he had previously acknowledged upon picking him up at the Hospital and with whom, almost exclusively, he shared an entire bus together while 3 seats away from one another for 20 minutes. Notwithstanding, the Bus Driver's sole target was Mr. Barkley.

77.     At 12:15 pm, while looking and pointing at Mr. Barkley through a large-panel rearview mirror situated directly above his driver's seat, Bus Driver inquired: "got a ticket bud?"  Due to music playing through his headphones, Mr. Barkley was innocently indifferent to Bus Driver's inquiry.  However, the Bus Driver's continued mannerisms compelled Mr. Barkley to begin paying attention to the front of the bus to analyze the Bus Driver's hand gestures.

78.     Bus Driver made a second inquiry by turning around, looking directly at Mr. Barkley and communicating: "You got a ticket?"  Subsequent to said inquiry, Mr. Barkley removed his headphones and responsively explained to the Bus Driver as follows: "Why do I need a ticket? You picked me at the hospital".

79.     In response to Mr. Barkley's explanation, the Bus Driver emphatically denied picking him at the Hospital.  Notwithstanding, Mr. Barkley exhaustively explained that he had boarded the bus at the Hospital and even took his All-Day Bus Pass out of his wallet and showed it to the Bus Driver.  Despite Mr. Barkley's efforts, Bus Driver remained deliberately indifferent to any explanations, willfully blind to the physical offer of proof (showing of the All-Day Bus Pass) but

16

steadfast in singling out and falsely accusing Mr. Barkley as a freeloader.  In furtherance of his

false accusations, Bus Driver exited the bus, again leaving the front door wide open, to summon

LANTA security to report Mr. Barkley as a freeloader.

**False Freeloading Accusation & Public Disparagement – Security Officer**

80.      Approximately 3 minutes later (12:18pm), Bus Driver returned to the bus alongside the

LANTA Security Officer (or "LSO").  Upon the two boarding the bus, Bus Driver singled out

Mr. Barkley to the LSO, however,

> a.   Bus Driver never directed the LSO to 12:11pm Female Passenger who had
>       boarded the bus while Bus Driver was in the Dunkin Donut;
>
> b.   Bus Driver never indicated to the LSO that Mr. Barkley swiped his All-Day
>       Bus Pass when he picked him up at the Hospital; and
>
> c.   Bus Driver never indicated to the LSO that Mr. Barkley actually took his All-
>       Day Bus Pass out of his wallet and showed it to him.

81.      Immediately upon the LSO reaching the Rosa Parks seat, the LSO, like Bus Driver, was

deliberately indifferent to Mr. Barkley's explanations that he had swiped his All-Day Bus Pass

upon boarding the bus when Bus Driver picked him up at the Hospital.

82.      The LSO was so indifferent to Mr. Barkley that he even ignored the following witness

statement "he [Mr. Barkley] was on the bus when we got on" which was made to the LSO by the

woman dressed in black and who had been seated directly behind Mr. Barkley upon boarding the

bus at the ATC.

83.      In addition to manifesting deliberate indifference to the truth of the matter, the LSO

publicly disparaged Mr. Barkley by stating to him on the bus "God only knows if you showered

last night."

**"You're not gonna make a fool out of me"**

84.    After making his thinly veiled mischaracterization that Mr. Barkley was an unhygienic individual too dirty to be touched, the LSO approached the driver's seat and inquired to the Bus Driver: "You want him off."

85.    Mr. Barkley again emphatically explained to the LSO: "You know what I'm saying.  I know what I did.  I'm telling you.  He picked me up at the hospital and I got an all-day pass."

86.    With calculating hesitation, Bus Driver affirmed Plaintiff's removal from the bus to the LSO and then responded to Mr. Barkley emphatic explanations by stating "If I picked you up at the hospital I would remember but you're not gonna make a fool out of me."

87.    Subsequently, the LSO called the police to falsely report Mr. Barkley as a freeloader.

### Police Arrive on the Bus

88.    At approximately 12:24 pm, Officer Wittman boarded the bus and upon doing so:

    a.    Neither Bus Driver nor LSO indicated to Officer Wittman that 12:11pm Female Passenger boarded the bus while Bus Driver was in the Dunkin Donuts;

    b.    Neither Bus Driver nor LSO indicated to Officer Wittman that Mr. Barkley swiped his All-Day Bus Pass when he picked him up at the Hospital;

    c.    Neither Bus Driver nor LSO indicated to Officer Wittman that Mr. Barkley actually took his All-Day Bus Pass out of his wallet and showed it to him; and

    d.    Neither Bus Driver nor LSO indicate to Officer Wittman that the woman seated directly behind Mr. Barkley stated that "he [Mr. Barkley] was on the bus when we got on."

89.    The following [actions occurred] and verbal communications were exchanged between LSO, Wittman and Mr. Barkley:

    [LSO identified Barkley to Wittman]

        LSO:        "Back there.  Black hat".

    [Wittman approached Barkley]

| Wittman: | What's going on? |
|---|---|

[Barkley and Wittman engaged in the following conversation]

| Wittman: | Swipe the card it isn't going to cost you anything. |
|---|---|
| Barkley: | I already did.  I didn't do nothing wrong.  He picked me up.  I got off to see the next bus.  The point is I already did it already. |
| Wittman: | Maybe you did.  I don't know if you did or didn't. |

[Barkley tries to say something but Wittman cuts him off]

| Wittman: | No, I'm talking now.  They asked you to swipe again.  It doesn't cost anything.  Swipe it again and there's no issue. |
|---|---|

[Wittman and Barkley continue discussing]

| Barkley: | I did it already. |
|---|---|

90.    Within 1 minute (approximately 12:25pm), while Officer Wittman is still engaged in conversation with Mr. Barkley, Officer Busch boarded the bus and immediately made inquiry to Bus Driver in reference to the All-Day Bus Pass: "Did he do it?"  To which, Bus Driver responded: "No, he didn't swipe it at all".

91.    Upon hearing Bus Driver's response, Officer Busch approached Mr. Barkley with the following directive: "I'm gonna make this really short with you.  Get up and swipe your card or you can get up and come with us or I will get you up.  Pick one option."  To Officer Busch's directive, Mr. Barkley responds: "Don't you put your hands on me.  I'm telling you I swiped it."

92.    Following their verbal exchanges, Officer Busch lunged for Plaintiff's arm but Mr. Barkley placed his arm behind the Rosa Parks seat.  Immediately thereafter, the following [actions occurred] and verbal communications were exchanged between Officer Busch, Officer Wittman and Mr. Barkley:

[Busch pulled pointed a taser gun at the face of Mr. Barkley].

19

| | |
|---|---|
| Plaintiff: | Why you gonna shoot me with a taser?? |
| Wittman: | Because you're not…. Because your resisting. |
| Plaintiff: | Get off of me bro.  Why are you all doing this? |
| Busch: | Get up. |
| Wittman: | Get up. |
| Plaintiff: | I'm telling you I did it.  I'm not getting up because I know I did it. |

### Use of Taser and Excessive Force

93.    Subsequent to the above exchanges, Officer Busch again lunged at Mr. Barkley and

began to forcibly remove him from the Rosa Parks seat.  In addition to both Officers Wittman

and Busch using excessive, unlawful physical force upon Mr. Barkley's person, Officer Busch

began to tase Mr. Barkley repeatedly.

94.    Within minutes, APDoes began boarding the bus.  Instead of intervening or stopping the

discriminatory conduct or the excessive use of force, the APDoes joined forces with Officer's

Wittman and Busch to unjustifiably corral Mr. Barkley; handcuff him; search his person and

place his personal belongings, including his wallet, into an evidence bag; and remove him from

the bus.

### Spoliation of Evidence – Destruction of All-Day Bus Pass

95.    Upon his removal from the bus, Mr. Barkley was surrounded by Officer Busch and

APDoes near an Allentown Police squad car which was parked within 10 feet of the bus

whereupon the APDoes initiated a secondary investigation and search of Mr. Barkley's person.

96.    While the APDoes were conducting their secondary investigation, Officer Busch

obtained the evidence bag and removed Mr. Barkley's wallet from within.  Immediately upon

obtaining, Officer Busch opened the wallet and removed Mr. Barkley's All-Day Bus Pass from

inside his wallet.  Officer Busch then took Mr. Barkley's wallet and walked around to the other side of the squad car; opposite from where Mr. Barkley stood handcuffed and surrounded by APDoes.

97.    Subsequently, Officer Busch walked toward the trunk of the squad car and whereupon he threw Mr. Barkley's wallet back to one of the APDoes.  The APDoes opened the wallet but could not locate Mr. Barkley's All-Day Bus Pass.

**Allentown Police Acted in Concert – Predictable Pattern Behavior**

98.    Defendants Officer Wittman and/or Officer Busch and/or the APDoes acted in concert.

99.    The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes caused Mr. Barkley to endure bodily injury and sustain damages.

100.    The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes intentionally deprived Mr. Barkley of his protected rights.

101.    Officer Wittman and/or Officer Busch and/or the APDoes are liable for their personal involvement in the commission of the unjustifiable and unlawful acts against Mr. Barkley.

102.    Officer Wittman and/or Officer Busch and/or the APDoes are not entitled to qualified immunity for their conduct.

103.    At all times material hereto, Officer Wittman, Officer Busch and the APDoes were acting pursuant to city/municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Mr. Barkley.

104.    At all times material hereto, Officer Wittman, Officer Busch and the APDoes were under the supervision, directly and indirectly, of the City of Allentown, Mayor Pawlowski and Chief Morris.

105.    The conduct manifested towards Mr. Barkley on August 18, 2016 by subordinate police

officers was not the first in kind or in nature.  However, said conduct has become the predictable

and patterned behavior of such subordinate police officers who perform subpar police work due

to the disregard manifested by their supervisors and policymakers coupled with the inadequate

and insufficient policies, practices and customs both promulgated and condoned by the City of

Allentown despite bearing knowledge of such constitutional violations.

**Surveillance Video & Other Footage**

106.     The factual allegations contained from paragraphs 62 -97 in this Complaint are

corroborated by surveillance video provided to Plaintiff by LANTA and as well as by video

provided to Plaintiff by bystander witnesses.

**Unlawful Detainment, Incarceration & False Charges**

107.    Immediately thereafter, at approximately 12:44 pm, Mr. Barkley was thrown up against

the squad car and transported via "paddy wagon" to the Allentown Police Department.

108.    From approximately 12:50pm until 8pm on the date of incident, Mr. Barkley was

maintained in the "bullpen" by the Allentown Police Department while waiting for preliminary

arraignment.

109.    At approximately 8pm, Mr. Barkley was transported from the "bullpen" to the Lehigh

County Prison while still waiting for preliminary arraignment.

110.    At approximately 10:00pm, Mr. Barkley was preliminary arraigned before Judge Michael

J. Faulkner (PA MDJ 31-3-02).

111.    After his preliminary arraigned, Mr. Barkley was falsely charged with (1) 18 §5104,

Grade M2, "Resist Arrest/Other Law Enforce"; (2) 18 §3926 §§ A1, Grade S, "Theft of Services

- Acquis of Service"; and (3) 18 §5503 §§ A1, Grade M3, "Disorderly Conduct Engage in Fighting."

112.    At approximately 11:00pm on that same evening, Mr. Barkley was discharged from the Lehigh County Prison.

113.    From 8/19/16 until 12/06/16, despite being falsely charged with crimes, Mr. Barkley was required and would contact Lehigh County Pretrial Services on a weekly basis[3] in order to be part of their pre-trial monitoring program.

### After Leaving Prison – All Day Bus Pass Missing from Wallet

114.    Subsequent to be processed at the prison, authorities returned to Mr. Barkley his personal belonging, including his wallet.

115.    Upon checking his wallet, Mr. Barkley noticed that his All Day Bus Pass was missing from within.

### Destruction of Surveillance - LANTA

116.    On 8/24/16 (6 days after the incident), Plaintiff, by and through his counsel, summoned LANTA to produce the pertinent portions of surveillance video from the date of incident, including surveillance video which showed Mr. Barkley purchasing his All-Day Bus Pass from the farebox from the Second and Chestnut Bus.

117.    On 11/18/16, LANTA only produced the surveillance video from LANTA Bus #0467 which included footage spanning from Mr. Barkley being picked up at the Hospital to Officer Busch destroying and/or concealing his All-Day Bus Pass (¶¶62-97).

---

[3] Mr. Barkley would contact Lehigh County Pre-Trial each and every Wednesday evening from 8/19/16 through 12/06/16.

118.    On 11/23/16, LANTA confirmed that the surveillance video from the Second and
Chestnut Bus farebox had not been retained despite Plaintiff's request.

119.    Said surveillance video served as exculpatory evidence to the Theft of Services charge
which had been falsely asserted against Plaintiff and for which Mr. Barkley was compelled to
endure malicious and wrongful prosecution as more fully described below.

**First Malicious and Wrongful Prosecution**

120.    On 12/6/16, a hearing was held before the Honorable Karen C. Devine[4] relating to the
following criminal charges: (1) 18 §5104, Grade M2, "Resist Arrest/Other Law Enforce"; (2) 18
§3926 §§ A1, Grade S, "Theft of Services  - Acquis of Service"; and (3) 18 §5503 §§ A1, Grade
M3, "Disorderly Conduct Engage in Fighting."

121.    At the First Malicious and Wrongful Prosecution, Officer Wittman served as prosecutor,
affiant, arresting officer and witness.

122.    Subsequent to the hearing, which included the testimony of both Officer Wittman and the
Bus Driver ("Betzler"), Judge Devine dismissed all of the criminal charges which had been
falsely asserted against Mr. Barkley.

123.    Despite Judge Devine's determination at the conclusion of the hearing, counsel for
LANTA was publicly adamant that Mr. Barkley had to be charged and convicted with a crime
relating to the date of the incident.

**Second Malicious and Wrongful Prosecution**

124.    On 12/21/16, despite Judge Devine's determination, Officer Wittman refiled criminal
charges against Mr. Barkley based on the same set of operative facts.  In doing so, Officer

---

[4] This criminal matter was docketed as MJ-31201-CR-0000395-2016, OTN# X042506-2.

Wittman charged Mr. Barkley with 18 §5503 §§ A4, Grade S, "Disorder Conduct Hazardous/Physi Off."

125.    The case was docketed as MJ-31201-NT-0000907-2016 and was transferred to Pennsylvania Magisterial District No. 31-1-04.

126.    For the Second Malicious and Wrongful Prosecution, Officer Wittman served as prosecutor, affiant, arresting officer and witness.

127.    On 4/28/17, a summary trial was held before the Honorable David M. Howells Jr. which included the testimony of Officer Wittman, the arresting officer and affiant.

128.    Subsequent to the summary trial, Judge Howells found Mr. Barkley not guilty of the criminal charge asserted him.

**Plaintiff's Damages**

129.    As a direct and proximate result of Defendants' actions and/or inactions and/or violations of Federal and State laws, Mr. Barkley has suffered injuries and damages.

130.    As a direct and proximate result of enduring excessive physical, brutal force coupled with being unjustifiably tasered, Mr. Barkley suffered bodily injuries that included, but are not limited to bruising and swelling of his right arm, bruising and swelling of his ribs, and bruising and swelling on his left leg.

131.    As a proximate result of Defendants' actions and/or inactions and/or violations of Federal and State laws, Mr. Barkley has suffered natural and probable consequences of wrongdoing, including continued feelings of severe emotional distress in the form of humiliation, embarrassment, mental-anguish, anxiety, stress, indignation, false arrest, false detainment and imprisonment, false criminal supervision and malicious prosecution on two separate and distinct occasions.

132.    Mr. Barkley, as a LANTA bus patron, has suffered natural and probable consequences of wrongdoing, including continued feelings of severe racial discrimination by being singled out while sitting in the Rosa Parks seat and being forcibly removed from the bus based on racially charged actors and behavior.  As a LANTA bus patron, Mr. Barkley was utterly humiliated on the date of the accident in front of all of his fellow bus passengers and in the public view when:

   a.  While still on the bus, Mr. Barkley was discriminated, interrogated, falsely accused of freeloading, tased, victimized through excessive force, manhandled, removed his seat, handcuffed and searched while other bus passengers stood watching him;

   b.  Upon being forcibly removed from the bus, Mr. Barkley was compelled to stand handcuffed in public at the ATC for approximately ten (10) minutes, surrounded by police officers who searched his person as if he had committed a crime; and

   c.  Mr. Barkley remained handcuffed and surrounded by police officers while Officer Busch concealed and destroyed his All-Day Bus Pass.

133.    As averred above, Mr. Barkley suffered damages by being unlawfully detained, incarcerated and falsely charged after the incident as follows:

   a.  For approximately 8 hours, while waiting for his preliminary arraignment, Mr. Barkley was detained in the "bullpen" by the Allentown Police Department;

   b.  After his 8 hour detainment in the "bullpen" Mr. Barkley was transported to the Lehigh County Prison for an additional 2 hour detainment while still waiting for preliminary arraignment;

   c.  Approximately 10 hours after being unlawfully arrested and detained, Mr. Barkley was preliminary arraigned with 3 criminal charges;

   d.  After being preliminary arraigned, Mr. Barkley was unlawfully detained for an additional hour and was not discharged from Lehigh County Prison until approximately 11:00pm that evening; and

   e.  From 8/19/16 until 12/06/16, despite being falsely charged with crimes, Mr. Barkley was required and would contact Lehigh County Pretrial Services on a weekly basis in order to be part of their pre-trial monitoring program

134.    Mr. Barkley has suffered monetary damages including but not limited to the expenses associated with retaining counsel to exonerate himself from the racially motivated criminal charges instituted against him on two separate and distinct occasions.  Moreover, Defendants enhanced these damages as evidenced by the following particulars:

      a.  The Bus Driver misrepresented that he never picked up Mr. Barkley from the Hospital;

      b.  The Bus Driver misrepresented that Mr. Barkley never swiped his All-Day Bus Pass upon boarding the bus at the hospital;

      c.  The Bus Driver actively concealed that Mr. Barkley showed him his All-Day Buss Pass;

      d.  The LANTA Security Officer actively concealed the crucial witness statement made by the woman seated directly behind Mr. Barkley on the bus;

      e.  The Allentown Defendants and/or Officer Busch destroyed and/or fraudulently concealed the All-Day Bus Pass which lead to him being falsely arrested and charged as well as being maliciously prosecuted on two separate and distinct occasions.

      f.  At the conclusion of the First Malicious and Wrongful Prosecution, all 3 criminal charges which had been falsely asserted against Mr. Barkley were dismissed;

      g.  Despite all 3 charges being dismissed at the First Malicious and Wrongful Prosecution, the LANTA and Allentown Defendants insisted that Mr. Barkley be recharged criminally;

      h.  Based on their joint persistence, a criminal charge was re-filed against Mr. Barkley by Officer Wittman thereafter; and

      i.  Subsequent to the Second Malicious and Wrongful Prosecution, Mr. Barkley was found not guilty of the criminal charge which had been refiled by Officer Wittman.

135.    The egregious collective conduct manifested towards Plaintiff, both on the day of the incident and thereafter, further demonstrates the discriminatory-charged agenda of the Defendants as well as the damages sustained by Mr. Barkley based upon of his race and color.

136.     Defendants' acts were done with the willful knowledge that Plaintiff could suffer severe

harm and face criminal prosecution as a result thereof.  In addition to compensatory, economic,

consequential and special damages, Plaintiff is entitled to punitive damages against each of the

individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these

individual Defendants were done maliciously, willfully or with a reckless or wanton disregard of

the constitutional rights of Mr. Barkley.

137.     Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-

judgment interest and costs as allowable by federal law.

**COUNT ONE (I)**
**DISCRIMINATION BASED ON RACE**
**AND COLOR IN VIOLATION OF**
**42 U.S.C. §2000d ET SEQ.**
**(Plaintiff v. All Defendants)**

138.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as

if fully set forth herein.

139.     Title VI, 42 U.S.C, §2000d et seq., prohibits discrimination on the basis of race, color and

national origin in programs and activities receiving federal financial assistance. Enabling

regulations, 28 C.F.R. §42.104, in relevant part, provide:

§42.104 Discrimination prohibited.

(a)     *General.* No person in the United States shall, on the ground of race,
color, or national origin be excluded from participation in, be denied the benefits
of, or be otherwise subjected to discrimination under any program to which this
subpart applies.

(b)     *Specific discriminator actions prohibited.* (1) A recipient to which this
subpart applies may not, directly or through contractual or other arrangements, on
the ground of race, color, or national origin:

(i)     Deny an individual any disposition, service, financial aid, or
benefit provided under the program;

(ii)     Provide any disposition, service financial aid, or benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program;

(iii)    Subject an individual to segregation or separate treatment in any matter related to his receipt of any disposition, service, financial aid, or benefit under the program;

(iv)    Restrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any disposition, service, financial aid, or benefit under the program;

(v)     Treat an individual differently from others in determining whether he satisfies any admission, enrollment, quota, eligibility, membership, or other requirement or condition which individuals must meet in order to be provided any disposition, service, financial aid, function or benefit provided under the program.

*See* 28 C.F.R. §42.104

140.    As alleged in the preceding paragraphs, Defendants have received and continue to receive Federal funding and/or assistance.

141.    Defendants, and each of them, discriminated against the complaining Plaintiff, and each of them, on the basis of his race and/or color.

142.    Defendants, and each of them, never questioned nor confronted nor interrogated nor restrained nor detained nor manhandled nor tasered nor forcibly removed nor arrested nor injured nor humiliated nor embarrassed nor discriminated any other LANTA bus passenger who boarded the bus in the Bus Driver's absence on the date of incident.

143.    Defendants, and each of them, only questioned, confronted, interrogated, restrained, detained, manhandled, tasered, forcibly removed, arrested, injured, humiliated, embarrassed and discriminated Mr. Barkley who, prior to said egregious acts, was quietly and peacefully seated in the Rosa Parks seat of the bus.

144.    Defendants, and each of them, treated Mr. Barkley differently than any other bus passenger in a manner which violates 42 U.S.C. §2000d et seq.

145.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §2000d et seq., Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWO (II)**
**DEPRAVATION OF RIGHT OR**
**PRIVILEGE IN VIOLATION OF**
**42 U.S.C. §1985**
**(Plaintiff v. All Defendants)**

146.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

147.    In relevant part, 42 U.S.C. §1985 (3) Depriving Persons of Rights or Privileges, provides:

> "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having or exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators."

42 U.S.C. §1985 (3)

148.    Plaintiff is informed and believes that, at all times material hereto, it was customary practice for LANTA bus passengers to disembark the bus at the ATC to stretch their legs or go to

the Dunkin Donuts or to smoke a cigarette and to re-board the same bus without using the

farebox upon re-entry; hence the Bus Driver leaving the front door wide open without any

LANTA-related supervision when he disembarked to go to the Dunkin Donuts.

149.    As averred above, while the bus was parked at the ATC, the Bus Driver disembarked

from the bus and, upon doing so, left the front door of the bus wide open.  In the Bus Driver's

absence and without any other LANTA-related supervision, other passengers boarded the bus on

the date of the incident.

150.    Upon the Bus Driver returning to the bus from the Dunkin Donuts, it was readily

apparent that other patrons had boarded the bus in his absence.  Despite this obvious observation,

the Bus Driver racially singled-out Mr. Barkley who had returned to the Rosa Parks seat on the

bus; the very same seat where Mr. Barkley had been sitting for twenty (20) uninterrupted

minutes in the presence of the Bus Driver prior to the bus stopping at the ATC.

151.    At no time did the Defendants make inquiry to any of the passengers who had boarded

the bus in the Bus Driver's absence.

152.    Defendants discriminated against Mr. Barkley, and each of them, on the basis of his race

and/or color.

153.    By racially singling out Plaintiff, the Defendants falsely and publicly personified Mr.

Barkley as being a freeloader, a fact which they knew was not true.

154.    Plaintiff is informed and believes that there was substantial cooperation between LANTA

and the Allentown Police Department, and that LANTA's security operations are intricately

intertwined with those of the Allentown Police Department as evidenced by the Defendants'

collective deliberate indifference and willful blindness manifested towards Mr. Barkley on the

day of the incident and thereafter.

155.    Through the collective acts of the Defendants, Mr. Barkley was singled out and forcibly removed from the bus through the use of false accusations, physical brutality and excessive force while the other passengers who boarded the same bus in the Bus Driver's absence were not subjected to such discriminatory treatment.

156.    Despite Mr. Barkley's repeated explanations to all of the Defendants that he had, in fact, swiped his All-Day Bus Pass when first picked up at the Hospital, his good faith attempts proved futile due to the racially charged intent of Defendants to deprive him of his rights and privileges through deliberate indifference to his explanations.

157.    Similarly, the utter disregard shown towards (a) the physical evidence of the All-Day Bus Pass; and (b) the crucial witness testimony from the woman seated directly behind the Rosa Parks seat was due to the Defendants' racially charged intent to deprive Mr. Barkley of his constitutional rights and privileges through willful blindness.

158.    Defendants collective deliberate disregard and willful blindness of the exonerating particulars, was due to their racially charged agenda to forcibly remove Mr. Barkley from his Rosa Parks seat and, ultimately, from the bus.

159.    Plaintiff is informed and believes that the LANTA Security Officer, Officer Busch, Officer Wittman and APDoes forcibly removed Mr. Barkley without conducting any investigation, despite the existence of both physical evidence[5] and witness testimony[6].

160.    The Bus Driver, the LANTA Security Officer, Officer Busch and Officer Wittman knew that Mr. Barkley was not freeloading.  Despite this knowledge, Officer Busch, Officer Wittman

---

[5] Physical Evidence – Surveillance from the LANTA bus and Mr. Barkley physically removed his All-Day Bus Pass from his wallet and showed his All-Day Bus Pass to the Bus Driver.
[6] Witness testimony – crucial witness testimony from the woman seated directly behind Mr. Barkley who informed the LANTA Security Officer that "he [Mr. Barkley] was on the bus when we got on."

and the APDoes accepted the representations of the Bus Driver and the LANTA Security Officer over the emphatic and repeated explanations of Mr. Barkley as well as the witness statement made by the woman seated directly behind the Plaintiff.  Defendants did not interview any witnesses nor did Defendants conduct any independent investigation before discriminating, interrogating, tasering, manhandling, arresting, humiliating and forcibly removing Mr. Barkley from the bus.

161.    Plaintiff is also informed and believes that the Bus Driver, the LANTA Security Officer, Officer Busch, Officer Wittman and the APDoes knew that removing Mr. Barkley from the bus deprived him of his constitutional rights.

162.    Defendants espoused and promulgated discriminatory policies and practices and conspired to deprive minorities, seniors, disabled passengers and other citizens of the United States of their civil rights, as alleged herein.

163.    The Bus Driver, the LANTA Security Officer, Officer Busch, Officer Wittman and the APDoes conspired together to completely deprive Mr. Barkley of his civil rights.

164.    Defendants condoned activities of the Bus Driver, the LANTA Security Officer, Officer Busch, Officer Wittman and the APDoes, that they knew to be illegal.

165.    Defendants, and each of them, subjected Mr. Barkley to outrageous public humiliation and intentional and/or reckless conduct, as described herein, based on his race and color.

166.    Defendants, and each of them, further treated Mr. Barkley disparately from other non-African American passengers.

167.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §1985, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT THREE (III)**
**RACIAL & COLOR DISCRIMINATION**
**UNDER COLOR OF STATE LAW IN**
**VIOLATION OF 42 U.S.C. §1983**
**(Plaintiff v. All Defendants)**

168.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

169.    As described more fully above, Mr. Barkley, an African-American male, was forcibly removed from the Rosa Parks seat of the bus by false witness accounts (made by the Bus Driver and the LANTA Security Officer), physical brutality, a taser gun and excessive force.  These egregious actions occurred despite Mr. Barkley having paid his bus fare.  None of the other passengers who boarded the bus in the Bus Driver's absence were even questioned.

170.    As described more fully above, Defendants, and each of them, discriminated against the complaining Mr. Barkley, and each of them, on the basis of his race and/or color.

171.    As described more fully above, Defendants, and each of them, have deprived Mr. Barkley of his federal constitutional and/or statutory rights by failing and refusing to provide Plaintiff with equal treatment as the other passengers, including the white passengers, and committed or omitted discriminatory acts as alleged herein.

172.    As described more fully above, while still on the bus, Mr. Barkley was discriminated, interrogated, falsely accused of freeloading, tased, victimized through excessive force,

manhandled, removed his seat, handcuffed and searched while other bus passengers stood watching him.

173.    As described more fully above, upon being forcibly removed from the bus, Mr. Barkley was compelled to stand handcuffed in public at the ATC for approximately ten (10) minutes, surrounded by police officers who searched his person as if he had committed a crime.

174.    As described more fully above, Mr. Barkley is informed and believes that the LANTA Security Officer, Officer Busch, Officer Wittman and APDoes forcibly removed him from the bus without conducting any investigation, despite the existence of both physical evidence and witness testimony.

175.    As described more fully above, the Bus Driver, the LANTA Security Officer, Officer Busch and Officer Wittman knew that Mr. Barkley was not freeloading on LANTA Bus #0467. Busch, Wittman and the APDoes accepted the representations of the Bus Driver and LANTA Security Officer and did not interview any witnesses (passengers or bystanders), did not do any independent investigation before discriminating, interrogating, tasering, manhandling, arresting, humiliating and forcibly removing Mr. Barkley off the bus.

176.    In furtherance of their discriminatory policies and practices, Defendants, and each of them, facilitated the support, cooperation and services of the Allentown Police Department to discriminate, falsely accuse, manhandle, taser, and forcibly remove Mr. Barkley from the bus as if those acts were officially carried out conjunctively by the LANTA and Allentown Defendants.

177.    Defendants, and each of them, acted under color of state law when they deprived Mr. Barkley of his federal rights, property interests and otherwise discriminated against him based upon Plaintiff's race and color.

178.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §1983, Mr.

Barkley has suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment

against All Defendants, jointly and severally, in an amount in excess of the $150,000.00

arbitration limit for the United States District Court for the Eastern District of Pennsylvania,

together with punitive damages, and other relief, including costs of suit, reasonable attorney and

expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT FOUR (IV)**
**DENIAL OF EQUAL RIGHTS UNDER**
**THE LAW IN VIOLATION OF**
**42 U.S.C. §1981**
**(Plaintiff v. All Defendants)**

179.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as

if fully set forth herein.

180.    42 U.S.C. § 1981 ("Section 1981"), in relevant part, provides:

> "(a) All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be parties,
> give evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other."

181.    Mr. Barkley, as an African American is a member of a protected class, and thus also had

the clearly established statutory right under this provision of 42 U.S.C. § 1981 to be free from

racially motivated accusations, beatings, arrests, and the filing of false charges.

182.    Defendants were all Caucasian and acted under color of state law, and with racially

charged motivation in their unlawful discrimination and assault upon Mr. Barkley.

183.    Although Section 1981 provides extensive equal protection rights, 42 U.S.C. § 1983

("Section 1983") provides the remedy for Section 1981 violations by state actors such as

Defendants.  Section 1981 was promulgated to afford remedy in instances where discrimination based upon race is an operative element of the claim.

184.    Defendants, and each of them, discriminated against Mr. Barkley on the basis of his race and/or color.

185.    Defendants, and each of them, deprived Mr. Barkley of rights protected by the Constitution of the United States of America ("Constitution") and also intended to deny him rights which are enjoyed by Caucasian citizens of the United States.

186.    Mr. Barkley did in fact suffer harm due to the Defendants' violations of his Constitutional rights with the intent to deprive him of rights enjoyed by Caucasian citizens of the United States.

187.    The supervisors and policy-makers of the Defendants were aware of the denial of equal rights under the law or deliberately overlooked and have developed practices, protocols policies, customs and/or habits of depriving non-Caucasians equal rights under the law, and either ignored or encouraged the Constitutional violations alleged herein

188.    As averred and more fully described below, pursuant to *Monell*[7], LANTA and the City of Allentown are liable for the actions of the Bus Driver, the LANTA Security Officer, Officer Busch, Officer Wittman and the APDoes since the deliberate conduct of the municipal was the precipitator of the wrongdoing.

189.    Mayor Pawlowski and Chief Morris are liable for the actions of Officer Busch, Officer Wittman and the APDoes based upon supervisory and policymaking liability.

190.    Mayor Pawlowksi and Chief Morris were deliberately indifferent to the fact that the constitutional violations sustained by Mr. Barkley are not the first of their kind, rather, such

---

[7] *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978)

violations have been reoccurring amongst African Americans throughout the City of Allentown to the extent that such unlawful conduct has become customary and/or habitual to the Allentown Police Department.

191.    Defendants, and each of them, acted under color of state law when they deprived Plaintiff of his federal rights, property interests and otherwise discriminated against him based upon Mr. Barkley's race and color.

192.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §1981, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT FIVE (V)**
**CONSPIRACY TO INTERFERE WITH**
**CIVIL RIGHTS IN VIOLATION OF**
**42 U.S.C. §1985**
**(Plaintiff v. All Defendants)**

193.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

194.    Defendants were all Caucasian and acted under color of state law, and with racially charged motivation in their unlawful discrimination and assault upon Plaintiff an African-American.

195.    Defendants, and each of them, acted under color of state law when they deprived Mr. Barkley of his federal rights, property interests and otherwise discriminated against him based upon his race and color.

196.    Defendants conspired to have Mr. Barkley, an African American, forcibly removed from the bus, falsely accused, criminally charged and maliciously prosecuted, including the destruction of exculpatory evidence.

197.    Defendants conspired to deny Plaintiff the right to be free from false criminal prosecution and their conspiracy was performed and furthered to deprive Mr. Barkley of his Constitutional rights and equal protection of the law.

198.    Collectively, the commission of the conspiracy by Defendants, deprived Mr. Barkley, an African American, of equal protection, equal privileges and immunities as afforded to him under the law.

199.    The commission of the conspiracy deprived Mr. Barkley, an African American, of equal protection, equal privileges and immunities as afforded to him under the law.

200.    As a direct and proximate result of Defendants' conspiracy, as recognized under 42 U.S.C. §1985, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT SIX (VI)**
**FAILURE TO PREVENT ACTIONS IN**

## VIOLATION OF 42 U.S.C. §§1985-6
### (Plaintiff v. All Defendants)

201.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as

if fully set forth herein.

202.    *See* 42 U.S.C. §1986 states:

> "Every person who, having knowledge that any of the wrongs conspired to be
> done, and mentioned in section 1985 of this title, are about to be committed, and
> having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do, if such wrongful act be committed, shall be liable to
> the party injured, or his legal representatives, for all damages caused by such
> wrongful act, which such person by reasonable diligence could have prevented;
> and such damages may be recovered in an action on the case; and any number of
> persons guilty of such wrongful neglect or refusal may be joined as defendants in
> the action; and if the death of any party be caused by any such wrongful act and
> neglect, the legal representatives of the deceased shall have such action therefor,
> and may recover not exceeding $5,000 damages therein, for the benefit of the
> widow of the deceased, if there be one, and if there be no widow, then for the
> benefit of the next of kin of the deceased. But no action under the provisions of
> this section shall be sustained which is not commenced within one year after the
> cause of action has accrued. (R.S. § 1981.)"

See 42 U.S.C. §1986

203.    42 U.S.C. §1985 and 42 U.S.C. §1986 impose civil liability for violations thereof.

204.    As averred above, the LANTA Defendants conspired to interfere with Mr. Barkley's civil

right and thus said conduct violated 42 U.S.C. § 1985(3).

205.    The LANTA Defendants were racially motivated to discriminate and thus deprived Mr.

Barkley, an African-American, of equal protection, equal privileges and immunities as afforded

to him under the law and as prescribed in 42 U.S.C. § 1985(3).  The LANTA Defendants

conspired to interfere with Mr. Barkley's civil right and thus said conduct violated 42 U.S.C. §

1985(3)

206.    As averred above, the Bus Driver and/or he LANTA Security Officer precipitated and

sanctioned Mr. Barkley's forcible removal from the bus.  Both the Bus Driver and the LANTA

Security Officer had the power and authority to prevent Mr. Barkley's rights from being violated. Despite their power and authority, the Bus Driver and the LANTA Security Officer turned willfully blind to the rights of Plaintiff.  In light of the aforementioned, civil liability should be imposed pursuant to 42 U.S.C. § 1986.

207.    The Allentown Defendants were racially motivated to discriminate and thus deprived Mr. Barkley, an African-American, of equal protection, equal privileges and immunities as afforded to him under the law and as prescribed in 42 U.S.C. § 1985(3).  The Allentown Defendants conspired to interfere with Mr. Barkley's civil right and thus said conduct violated 42 U.S.C. § 1985(3).

208.    As averred above, Officer Busch, Officer Wittman and the APDoes facilitated and executed Mr. Barkley's forcible removal from the bus as well as disregarding and destroying exculpatory evidence.  Officer Busch, Officer Wittman and the APDoes had the power and authority to prevent Mr. Barkley's rights from being violated.  Despite their power and authority, Officer Busch, Officer Wittman and the APDoes turned willfully blind to the rights of Plaintiff. In light of the aforementioned, civil liability should be imposed pursuant to 42 U.S.C. § 1986.

209.     In light of the operative facts and particulars, all Defendants conspired to interfere with Plaintiff's civil right and thus said conduct violated 42 U.S.C. § 1985(3).

210.    Defendants, collectively, acted in concert to further their conspiracy by engaging and subsequently covering up their unjustifiable discrimination of Mr. Barkley, an African American.

211.    The outrageous conduct in furtherance of the collective conspiracy of the Defendants occurred without justification, provocation or reason, in violation of Mr. Barkley's Constitutional rights under the Fourth Amendment.

212.    Mr. Barkley has suffered harm from the Defendants' failure to prevent the conspiracy which violated his Constitutional rights for which he now seeks damages under 42 U.S.C. § 1986.

213.    The Bus Driver, LANTA Security Officer, Officer Busch, Officer Wittman and the APDoes are liable for their personal involvement in the aforementioned actions and inactions which caused Mr. Barkley to suffer injuries and sustain damages.

214.    Pursuant to *Monell*, LANTA is liable for the actions and inactions manifested by the Bus Driver and LANTA Security Officer which impeded Mr. Barkley's equal protection, equal privileges and immunities as afforded to him under the law.

215.    Pursuant to *Monell,* the City of Allentown is liable for the actions and inactions manifested by Officer Busch, Officer Wittman and APDoes which impeded Mr. Barkley's equal protection, equal privileges and immunities as afforded to him under the law.

216.    The actions and/or inactions manifested by the Defendants which occurred on August 18, 2016 were neither first in nature nor kind. To the contrary, those actions and inactions, arose from known propensities, habitual conduct and predictable protocols which were within the purview of the superior chain of command, supervision and administration, including LANTA, the City of Allentown, Mayor Pawlowski and Chief Morris.  It is the deliberate indifference of these supervisors and policymakers whose willful blindness to the systemic breakdown of the governing policies, practices, protocols which has allowed constitutional deprivations to fester and, in doing so, condoned such violations to be directed at a targeted member of the unprotected African-Americans, like Mr. Barkley.

217.    Mr. Barkley suffered harm due to the Defendants' conspiracy to violate his constitutional rights with the intent to deprive him of equal protection of the law.  Mr. Barkley suffered further

harm when those with the power and authority to prevent the aforementioned harm because voluntary unconscious to his civil rights.

218.    As a direct and proximate result of Defendants' federal violations, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above and he is entitled to relief as prescribed in 42 U.S.C. §1986.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### COUNT SEVEN (VII)
### *BRADY* VIOLATIONS
### (Plaintiff v. All Defendants)

219.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

220.    The LANTA Defendants (Bus Driver and LANTA Security Officer) and the Allentown Defendants (Officer Busch, Officer Wittman and the APDoes) performed a joint investigation in determining whether Mr. Barkley was a thief of public services.

221.    In performing their joint investigation, Defendants encountered the following exculpatory evidence:

    a.  Bus Driver concealed the fact that Mr. Barkley boarded the bus at the Hospital;

    b.  Bus Driver concealed the fact that Mr. Barkley swiped his All-Day Bus Pass upon boarding his bus at the Hospital;

    c.  Bus Driver concealed the fact that he acknowledged Mr. Barkley upon boarding his bus at the Hospital;

    d.   Bus Driver concealed the fact that Mr. Barkley showed him his All-Day Bus Pass;

    e.   The LANTA Security Officer concealed the witness statement made by the woman seated directly behind Mr. Barkley on the bus who stated: "he [Mr. Barkley] was on the bus when we got on."

    f.   Officer Busch concealed and/or destroyed Mr. Barkley's All-Day Bus Pass; and

    g.   LANTA did not retain the surveillance video showing Mr. Barkley purchasing his All-Day Bus Pass from the Second and Chestnut bus farebox.

222.    The exculpatory evidence would have been favorable to Mr. Barkley by quickly exonerating him from criminal wrongdoing.

223.    Mr. Barkley was prosecuted at two separate and distinct criminal proceedings where Officer Wittman served as prosecutor, affiant, arresting officer and witness.

224.    Despite being ultimately exonerated, Mr. Barkley was prejudiced by the concealment and destruction of exculpatory evidence since he was compelled to defend himself at two separate and distinct criminal proceedings.

225.    As a proximate result of Defendants' *Brady* violations, Mr. Barkley has suffered damages as averred herein and as described more fully above.

### COUNT EIGHT (VIII)
### STATE CIVIL CONSPIRACY
### (Plaintiff v. All Defendants)

226.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

227.    Under the common law of Pennsylvania, a civil conspiracy claim is established when (1) a claimant adequately avers the combination or agreement of two or more persons to commit an

unlawful act or perform a lawful act by unlawful means[8]; and (2) the claimant can demonstrate

that the defendant(s) had an unjustified intent to injure or acted maliciously[9].

228.    As averred above, Defendants were racially motivated to discriminate and thus deprived

Mr. Barkley, an African-American, of equal protection, equal privileges and immunities as

afforded to him under the law.

229.    As averred above, Mr. Barkley has suffered harm from the Defendants' failure to prevent

the conspiracy to violate his rights, for which Plaintiff seeks damages.

230.    As a proximate result of Defendants' conspiracy, Mr. Barkley has suffered injuries and

damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment

against All Defendants, jointly and severally, in an amount in excess of the $150,000.00

arbitration limit for the United States District Court for the Eastern District of Pennsylvania,

together with punitive damages, and other relief, including costs of suit, reasonable attorney and

expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT NINE (IX)**
**STATE LAW CLAIM**
**DISCRIMINATION BASED ON RACE &**
**COLOR IN VIOLATION OF THE**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. §§ 951-963**
**(Plaintiff v. All Defendant)**

231.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as

if fully set forth herein.

232.    The Pennsylvania Human Relations Act was promulgated for the purpose of:

---

[8] See *Thompson Coal Co. v Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979); *Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985); *Slaybaugh v. Newman*, 479 A.2d 466, 472 (Pa. Super. Ct. 1979).
[9] See *Thompson Coal Co. v Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979); *Rutherford v. Presbyterian-University Hospital*, 612 A.2d 500, 508 (Pa. Super. Ct. 1992) (citing Thompson Coal).

"Prohibiting certain practices of discrimination because of race, color, religious creed, ancestry, age or national origin by employers, employment agencies, labor organizations and others as herein defined; creating the Pennsylvania Human Relations Commission in the Governor's Office; defining its functions, powers and duties; providing for procedure and enforcement; providing for formulation of an educational program to prevent prejudice; providing for judicial review and enforcement and imposing penalties defining "advertisement" and "advertiser"; and providing for certain forms of advertisement, for limitations and for civil"

233.    Under Section 2 (Findings and Declaration of Policy), the Pennsylvania Human Relations

Act provides:

"SECTION 2. FINDINGS AND DECLARATION OF POLICY.

(a) The practice or policy of discrimination against individuals or groups by reason of their race, color, familial status, religious creed, ancestry, age, sex, national origin, handicap or disability, use of guide or support animals because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals is a matter of concern of the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state. The denial of equal employment, housing and public accommodation opportunities because of such discrimination, and the consequent failure to utilize the productive capacities of individuals to their fullest extent, deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living, necessitates their resort to public relief and intensifies group conflicts, thereby resulting in grave injury to the public health and welfare, compels many individuals to live in dwellings which are substandard, unhealthful and overcrowded, resulting in racial segregation in public schools and other community facilities, juvenile delinquency and other evils, thereby threatening the peace, health, safety and general welfare of the Commonwealth and its inhabitants.

(b) It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their race, color, religious creed, ancestry, age, sex, national origin, handicap or disability, use of guide or support animals because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals, and to safeguard their right to obtain and hold employment without such discrimination, to assure equal opportunities to all individuals and to safeguard their rights to public accommodation and to secure housing accommodation and commercial property regardless of race, color, familial status, religious creed, ancestry, age, sex, national origin, handicap or

disability, use of guide or support animals because of blindness or deafness of the user or because the user is a handler or trainer of guide or support animals.

(c) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, prosperity, health and peace of the people of the Commonwealth of Pennsylvania."

234.   Under Section 3 (Right to Freedom from Discrimination in Employment, Housing and

Public Accommodation), the Pennsylvania Human Relations Act states:

"The opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and privileges of any public accommodation and of any housing accommodation and commercial property without discrimination because of race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, national origin, the use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act."

235.   The Pennsylvania Human Relations Act defines accommodation as:

"The term "public accommodation, resort or amusement" means any accommodation, resort or amusement which is open to, accepts or solicits the patronage of the general public, including but not limited to inns, taverns, roadhouses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants or eating houses, or any place where food is sold for consumption on the premises, buffets, saloons, barrooms or any store, park or enclosure where spirituous or malt liquors are sold, ice cream parlors, confectioneries, soda fountains and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises, drug stores, dispensaries, clinics, hospitals, bathhouses, swimming pools, barber shops, beauty parlors, retail stores and establishments, theaters, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, fairs, bowling alleys, gymnasiums, shooting galleries, billiard and pool parlors, public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses and all educational institutions under the supervision of this Commonwealth, nonsectarian cemeteries, garages and all public conveyances operated on land or water or in the air as well as the stations, terminals and airports thereof, financial institutions and all Commonwealth facilities and services, including such facilities and services of all political subdivisions thereof, but shall not include any accommodations which are in their nature distinctly private"

236.    On August 18, 2016, Mr. Barkley sought to obtain "public accommodation" for roundtrip travel from his home to his doctor's appointment.

237.    At all times material hereto, LANTA Bus #0467 was a public accommodation as defined by the Pennsylvania Human Relations Act.

238.    Defendants, and each of them, discriminated against Mr. Barkley on the basis of his race and/or color for the reasons alleged in multiple averments above.  In light of such discrimination, Mr. Barkley was deprived of his rights under the Pennsylvania Human Relations Act.

239.    As a direct and proximate result of Defendants' violation of the Pennsylvania Human Relations Act, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TEN (X)**
**STATE LAW CLAIM**
**STATE CONSTITUTIONAL VIOLATIONS**
**(Plaintiff v. All Defendants)**

240.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

241.    Defendants' actions and/or inactions, as averred above, violated rights afforded to Mr. Barkley pursuant to the Constitution of the Commonwealth of Pennsylvania[10].

242.    As a direct and proximate result of Defendants' violation of Constitution of the Commonwealth of Pennsylvania, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT ELEVEN (XI)
## STATE LAW CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v. All Defendants)

243.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

244.    As more fully described and alleged in numerous averments above, the deliberate, extreme, outrageous, wanton and despicable conduct of the Defendants, and each of them, manifested towards Mr. Barkley caused him severe emotional and physical distress.

245.    Any reasonable person in Mr. Barkley's position would be unable to cope with such conduct as manifested by the Defendants, and each of them.

---

[10] See Article I, Section 1; Article I, Section 8; and Article I, Section 9 of the Constitution of the Commonwealth of Pennsylvania.

246.    The acts of the Defendants, and each of them, were malicious, oppressive, deplorable, and in conscious disregard of Mr. Barkley's rights and privileges, and with willful knowledge that Plaintiff could suffer severe harm and emotional and mental distress.

247.    As a direct and proximate result of the extreme and outrageous conduct by the Defendants, and each of them, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above including but not limited to continued feelings of severe emotional distress in the form of humiliation, embarrassment, mental-anguish, anxiety, stress, and indignation.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### COUNT TWELVE (XII)
### STATE LAW CLAIM
### SLANDER/DEFAMATION PER SE/FALSE ACCUSATION
### (Plaintiff v. LANTA, Betzler & LANTA Security Officer)

248.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

249.    The LANTA Security Officer, in front of his fellow bus passengers, personified Plaintiff as an unclean person by stating that "he did not know when [Mr. Barkley] had showered last" to disparage and discriminate Mr. Barkley.

250.    Both the Bus Driver and the LANTA Security Officer publicly communicated to the Allentown Police Department, in front of his fellow bus passengers, that Mr. Barkley was a freeloader and a thief of public services.

251.    The Bus Driver knew that Plaintiff had swiped his All-Day Bus Pass based upon his personal acknowledgement to Mr. Barkley ("Hey buddy") after hearing the confirmation beep of the farebox coupled with the fact that Plaintiff had showed him his All-Day Bus Pass during the Bus Driver's interrogation of Mr. Barkley.

252.    Both the Bus Driver and the LANTA Security Officer publicly defamed Mr. Barkley, a LANTA bus patron in the presence of fellow passengers, including passengers with who Mr. Barkley had pre-existing relationships.  In front of said individuals, Mr. Barkley was made to look like a thief of public services and a criminal.

253.    As a direct and proximate result of these slanderous statements and false accusations, Mr. Barkley has suffered injuries and damages as averred herein and as described more fully above, including but not limited to loss of reputation and shame.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against LANTA, Betzler & LANTA Security Officer, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### COUNT THIRTEEN (XIII)
### STATE LAW CLAIM
### NEGLIGENCE/VICARIOUS LIABILITY
### (Plaintiff v. LANTA, Betzler & LANTA Security Officer)

254.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

255.    At all times material hereto, LANTA owned, possessed and/or was responsible for LANTA Bus #0467.

256.   Mr. Barkley, who had purchased an All-Day Bus Pass on the day of incident, was LANTA's lawful public invitee.

257.   The careless and negligent conduct of LANTA, individually and/or by and through its agents, ostensible agents, servants and/or employees, consisted of, but is not limited to, the following:

     a.     Failing to exercise due care under the circumstances;

     b.     Operating a bus without regard to Plaintiff's rights, safety, and position within the bus in violation of the laws of this Commonwealth;

     c.     Negligently hiring, retaining, training, and supervising the Bus Driver as well as the LANTA Security Officer of the bus upon which Mr. Barkley was injured;

     d.     Negligently entrusting the operation and security of its bus (LANTA Bus #0467) in the possession and control to its agents, ostensible agents, servants, and/or employees;

     e.     Having its agents, ostensible agents, servants, and/or employees operating and securing its commercial motor vehicle (LANTA Bus #0467) in an unsafe or careless or negligent manner;

     f.     Failing to entrust the operation and security of its commercial motor vehicle (LANTA Bus #0467) properly;

     g.     Failing to entrust the operation and security of said commercial motor vehicle (LANTA Bus #0467) safely;

     h.     Having its agents, ostensible agents, servants, and/or employees fail to warn Mr. Barkley properly;

     i.     Having its agents, ostensible agents, servants, and/or employees fail to maintain a proper lookout for the passengers, including Plaintiff;

     j     Having its agents, ostensible agents, servants, and/or employees operate and/or conduct security on its commercial motor vehicle (LANTA Bus #0467) in a negligent and/or reckless manner;

     k.     Having its agents, ostensible agents, servants, and/or employees fail to be properly qualified as a bus driver (Bus Driver) and/or as a security

officer (JD Security Officer) for a motor vehicle of the kind operated by LANTA where the subject incident occurred;

l.     Having its agents, ostensible agents, servants, and/or employees fail to abide by its policies and procedures regarding the safe operation and security of its commercial motor vehicle;

m.    Failing to having established proper policies and/or procedures regarding the safe operation and security of its commercial motor vehicle; and

n.    Failing to enforce its rules, regulations in relation to the safety of passengers, like Plaintiff, of its commercial motor vehicle

258.    It was the duty of LANTA to keep and maintain the safety of its passengers, like Mr. Barkley.

259.    LANTA is liable for the injuries inflicted upon Mr. Barkley.

260.    At all times material hereto LANTA, its agents, ostensible agents, servants, and/or employees, were under a duty to Mr. Barkley to maintain his safety.

261.    LANTA's duty was to maintain proper policy or procedures or safeguards to avoid unnecessary physical altercations over a bus ticket.

262.    LANTA's negligence includes a failure to regard the rights, safety, and position of Mr. Barkley and other members of the public in similar situations.

263.    LANTA's negligence also includes a failure to properly maintain a procedure that adequately protects the rights of their passengers.

264.    LANTA's negligence also includes the failure to utilize reasonable care in handling this type of situation.

265.    As a direct and proximate result of LANTA's negligence, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above, including bodily injuries.

266.    At all times material hereto, Bus Driver was responsible for driving/operating LANTA Bus #0467.

267.    Mr. Barkley, who had purchased an All-Day Pass on the day of incident, was a lawful public invitee on the bus operated by the Bus Driver.

268.    The careless and negligent conduct of the Bus Driver, individually and/or by and through LANTA and/or JD Security Officer, consisted of, but is not limited to, the following:

        a.    Failing to exercise due care under the circumstances;

        b.    Operating a bus without regard to Mr. Barkley's rights, safety, and position within the bus in violation of the laws of this Commonwealth;

        c.    Negligently supervising LANTA Security Officer on the day of the incident;

        d.    Negligently entrusting LANTA Security Officer to maintain and/or establish a secure environment on his bus;

        e.    Operating and/or securing his bus in an unsafe or careless or negligent manner;

        f.    Failing to warn Mr. Barkley properly;

        g.    Failing to maintain a proper lookout for his passengers;

        i.    Lacking the requisite qualifications as a bus driver (Bus Driver) of a bus of the kind operated by LANTA where the subject incident occurred (where Mr. Barkley was injured); and

        j.    Failing to abide by applicable policies and procedures regarding the safe operation and security of his bus;

269.    It was the duty of the Bus Driver to keep and maintain the safety of his passengers, like Mr. Barkley.

270.    Bus Driver is liable for the injuries inflicted upon Mr. Barkley.

271.    At all times material hereto, Bus Driver was under a duty to maintain the safety of his passengers, including Mr. Barkley.

272.    Bus Driver's negligence includes a failure to regard the rights, safety, and position of Mr. Barkley and other members of the public in similar situations.

273.    Bus Driver's negligence also includes the failure to utilize reasonable care in handling

this type of situation.

274.    As a direct and proximate result of Bus Driver's negligence, Mr. Barkley suffered

injuries and damages as averred herein and as described more fully above, including bodily

injuries.

275.    At all times material hereto, LANTA Security Officer was responsible for securing

and/or monitoring the bus (LANTA Bus #0467).

276.    Mr. Barkley, who had purchased a "Day Pass" on the day of incident, was a lawful public

invitee on the bus secured and/or monitored by LANTA Security Officer.

277.    The careless and negligent conduct of LANTA Security Officer, individually and/or by

and through LANTA and/or Bus Driver, consisted of, but is not limited to, the following:

      a.      Failing to exercise due care under the circumstances;

      b.      Securing a bus without regard to Plaintiff's rights, safety, and position within the bus in violation of the laws of this Commonwealth;

      c.      Negligently supervising the bus driver (Bus Driver) and/or the responding police officers;

      d.      Negligently entrusting the bus driver (Bus Driver) to maintain and/or establish a secure environment on LANTA Bus #0467;

      e.      Securing LANTA Bus #0467 in an unsafe or careless or negligent manner;

      f.      Failing to warn Mr. Barkley properly;

      g.      Failing to maintain a proper lookout for the passengers of LANTA Bus #0467;

      h.      Securing LANTA Bus #0467 in a negligent and/or reckless manner;

      i.      Monitoring LANTA Bus #0467 in a negligent and/or reckless manner;

      j.      Lacking the legal requisite qualifications as a security officer (LANTA Security Officer) necessary to conduct security on a bus of the kind

operated by LANTA and where the subject incident occurred (where Plaintiff was injured);

k.     Failing to abide by applicable policies and procedures regarding security of his bus; and

l.     Conducting an investigation of the alleged incident in a negligent manner.

278.   It was the duty of LANTA Security Officer to maintain the security and safety of LANTA passengers, like Mr. Barkley, on LANTA Bus #0467 on the day of the incident.

279.   LANTA Security Officer is liable for the injuries inflicted upon Plaintiff.

280.   LANTA Security Officer's duty was to adhere to policy or procedures or safeguards to avoid unnecessary physical altercations over a bus ticket.

281.   LANTA Security Officer's negligence includes a failure to regard the rights, safety, and position of the Plaintiff and other members of the public in similar situations on LANTA buses.

282.   LANTA Security Officer's negligence also includes a failure to properly maintain a procedure that adequately protects the rights of LANTA passengers.

283.   LANTA Security Officer's negligence also includes the failure to utilize reasonable care in handling this type of situation.

284.   As a direct and proximate result of LANTA's negligence, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above, including bodily injuries.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against LANTA, Betzler & LANTA Security Officer, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

## COUNT FOURTEEN (XIV)
## STATE LAW CLAIM
## BREACH OF CONTRACT
### (Plaintiff v. LANTA, Betzler & LANTA Security Officer)

285.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

286.    Mr. Barkley entered into a contract with LANTA when he purchased an All-Day Bus Pass with $4.00 cash from the farebox of the first bus which he boarded at the 2nd and Chestnut Street bus stop on the morning of the date of incident.

287.    The terms of the All-Day Bus Pass are to provide the patron with unlimited bus rides on the day it is first used in a LANTA farebox.

288.    The terms of the contract include the use of LANTA's services without physical violence or loss of dignity.

289.    The LANTA Defendants, and each of them, breached the terms of the contract by: (a) not allowing Plaintiff to remain seated in the Rosa Parks seat peacefully and quietly; (b) behaving rudely and disrespectfully towards the Plaintiff; (c) publicly humiliating Plaintiff on and off the bus; (d) conspiring to remove Plaintiff from the bus based on his race and color without an investigation, which relied on substantial cooperation between the LANTA Security Officer and Allentown Police Department and the fact that LANTA, federal and state government are inextricably intertwined; (e) not allowing Plaintiff to complete his bus ride home; (f) tasering Plaintiff; (g) manhandling Plaintiff; (h) falsely asserting criminal charges against Plaintiff; (i) destroying crucial evidence which would exonerate the false criminal charges asserted against Plaintiff; and (j) not allowing Plaintiff the benefit of their bargain, all to his detriment.

290.    The breaches, as aforesaid, have caused Plaintiff financial damages.

291.    As a direct and proximate result of the breaches, as foresaid, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above, including but not limited to consequential damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against LANTA, Betzler & LANTA Security Officer, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT FIFTEEN (XV)**
**BREACH OF IMPLIED CONTRACT**
**(Plaintiff v. LANTA, Betzler & LANTA Security Officer)**

In the event it is determined that no written agreement (contract) existed between the parties as averred in Count Thirteen, the Plaintiff alleges that:

292.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

293.    Mr. Barkley entered into a contract with LANTA when he purchased an All-Day Bus Pass with $4.00 cash from the farebox of the first bus which he boarded at the 2nd and Chestnut Street bus stop on the morning of the date of incident.

294.    The terms of the All-Day Bus Pass are to provide the patron with unlimited bus rides on the day it is first used in a LANTA farebox.

295.    The implied terms of the contract included the use of LANTA's services without physical violence or loss of dignity.

296.    The LANTA Defendants, and each of them, breached the implied terms of the contract by: (a) not allowing Plaintiff to remain seated in the Rosa Parks seat peacefully and quietly; (b) behaving rudely and disrespectfully towards the Plaintiff; (c) publicly humiliating Plaintiff on and off the bus; (d) conspiring to remove Plaintiff from the bus based on his race and color without an investigation, which relied on substantial cooperation between the LANTA Security Officer and Allentown Police Department and the fact that LANTA, federal and state government are inextricably intertwined; (e) not allowing Plaintiff to complete his bus ride home; (f) tasering Plaintiff; (g) manhandling Plaintiff; (h) falsely asserting criminal charges against Plaintiff; (i) destroying crucial evidence which would exonerate the false criminal charges asserted against Plaintiff; and (j) not allowing Plaintiff the benefit of their bargain, all to his detriment.

297.    The breaches, as aforesaid, have caused Plaintiff financial damages.

298.    Due to the existence of the implied in law and implied in fact contracts, Mr. Barkley is entitled to compensation for the injuries which he suffered and for the damages which he sustained.

299.    As a direct and proximate result of the breaches, as foresaid, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above, including but not limited to consequential damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against LANTA, Betzler & LANTA Security Officer, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit,

reasonable attorney and expert fees as well as all such further relief as this Honorable Court

deems just and proper.

### COUNT SIXTEEN (XVI)
### EXCESSIVE FORCE AND PHYSICAL
### BRUTALITY IN VIOLATION OF THE
### FOURTH AND FOURTEENTH AMENDMENTS
### 42 U.S.C. §1983
### (Plaintiff v. Allentown Defendants)

300.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as

if fully set forth herein.

301.    Mr. Barkley is a citizen of the United States and Chief Morris, Officer Busch, Officer

Wittman and the APDoes to this claim are persons for purposes of 42 U.S.C. § 1983.

302.    At all times material hereto, Chief Morris, Officer Busch, Officer Wittman and the

APDoes were acting under the color of state law in their various capacities as police officers and

their acts or omissions were conducted within the scope of their official duties or employment.

303.    At all times material hereto, Mr. Barkley had: (1) a clearly established Constitutional

right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by

law enforcement; and (2) a clearly established constitutional right under the Fourth Amendments

to be secure in his person from unreasonable seizure through excessive force.

304.    Any reasonable police officer knew or should have known of these rights at the time of

the subject matter incidents.

305.    Officer Wittman, Officer Busch and the APDoes unlawfully seized Mr. Barkley through

the use of excessive physical and mechanical (taser) force caused Mr. Barkley to be

unreasonably restrained of his freedom.

306.    The force used by Officer Wittman, Officer Busch and the APDoes constituted excessive

force in that it did cause Mr. Barkley to experience bodily injury.

307. The application of such force was unreasonable under the operative circumstances and unconstitutionally excessive.

308. Officer Wittman and/or Officer Busch and/or the APDoes used excessive force in detaining and arresting of Mr. Barkley.

309. Officer Wittman and/or Officer Busch and/or the APDoes used excessive force when:

   a. Officer Busch tased (dry stunned) Mr. Barkley several times;

   b. Officer Wittman, Officer Busch and the APDoes violently manhandled and wrestled Mr. Barkley to the ground of the bus;

   c. Officer Wittman, Officer Busch and the APDoes jumped on, hit, kneed, struck and arm-barred Mr. Barkley; and

   d. Officer Wittman, Officer Busch and the APDoes restrained and handcuffed Mr. Barkley on the bus.

310. The amount of physical and mechanical (taser) force used by Officer Wittman and/or Officer Busch and/or the APDoes exceeded the amount which a reasonable police officer would have used under similar circumstances.  In fact, said force was so excessive that it violated the Allentown Police Department's own inadequate and insufficient policies.

311. The amount of force used by Officer Wittman and/or Officer Busch and/or the APDoes was objectively unreasonable, given the operative circumstances, and violated the constitutional rights of Mr. Barkley under the Fourth and Fourteenth Amendments.

312. In addition to the use of force being excessive, the actions of Officer Wittman and/or Officer Busch and/or the APDoes to detain and/or arrest Plaintiff were malicious, reckless, egregious and demonstrated deliberate indifference and willful blindness to Mr. Barkley's federally protected rights.

313. Prior to enduring excessive physical and mechanical (taser) force, Mr. Barkley was peacefully seated in the Rosa Parks seat of the bus.

314.    At no time material hereto did Mr. Barkley present any threat to the Defendants nor to any of the other bus passengers.

315.    Defendants Officer Wittman and/or Officer Busch and/or the APDoes acted in concert in intentionally depriving Mr. Barkley of his constitutional rights.

316.    The conduct, acts or omissions of Defendants Officer Wittman and/or Officer Busch and/or the APDoes caused Mr. Barkley to endure bodily injury and sustain damages.

317.    The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes intentionally deprived Mr. Barkley of his constitutional rights.

318.    Officer Wittman and/or Officer Busch and/or the APDoes are liable for their personal involvement in the commission of the unjustifiable and unlawful acts against Mr. Barkley and are not entitled to qualified immunity.

319.    As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes 1-10, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT SEVENTEEN (XVII)**
**42 U.S.C. §1983 RACIAL DISCRIMINATION IN**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE**
**OF THE FOURTEENTH AMENDMENT AND**
**42 U.S.C. §1981**
**(Plaintiff v. Allentown Defendants)**

320.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

321.   42 U.S.C. § 1983 ("Section 1983") provides:

> "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

322.   Mr. Barkley is a citizen of the United States and Defendants Chief Morris, Officer Busch, Officer Wittman and the APDoes to this claim are persons for purposes of Section 1983.

323.   At all times material hereto, Defendants Chief Morris, Officer Busch, Officer Wittman and the APDoes were acting under the color of state law in their various capacities as police officers and their acts or omissions were conducted within the scope of their official duties or employment.

324.   At all times material hereto, Mr. Barkley had a clearly established constitutional right to be free from racial discrimination from law enforcement and/or police officers and for to have the freedom to enjoy equal protection of the laws.

325.   42 U.S.C. § 1981("Section 1981") provides:

> "(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

326.   Mr. Barkley, as an African American is a member of a protected class, and thus also had the clearly established statutory right under this provision of 42 U.S.C. § 1981 to be free from racially motivated beatings, arrests, searches and the filing of false charges.

327.    Any reasonable police officer knew or should have known of these rights at the time of the subject matter incidents.

328.    Mr. Barkley's race was a motivating factor in the decisions, acts and omissions of Defendants.

329.    Defendants' conduct was undertaken with the purpose of depriving Mr. Barkley of the equal protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and Section 1981.

330.    Defendants engaged in the conduct as averred and more fully described above as willful, malicious and said conduct was facilitated in bad faith with reckless disregard of Mr. Barkley's federally protected rights of equal protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and Section 1981.

331.    Defendants Officer Wittman and/or Officer Busch and/or the APDoes acted in concert in intentionally depriving Mr. Barkley of his constitutional rights.

332.    The conduct, acts or omissions of Defendants Officer Wittman and/or Officer Busch and/or the APDoes caused Mr. Barkley to endure bodily injury and sustain damages.

333.    The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes intentionally deprived Mr. Barkley of his constitutional rights.

334.    Officer Wittman and/or Officer Busch and/or the APDoes are liable for their personal involvement in the commission of the unjustifiable and unlawful acts against Mr. Barkley and are not entitled to qualified immunity.

335.     As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes 1-10, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT EIGHTEEN (XVIII)**
**RETALIATION IN VIOLATION OF**
**THE FIRST AMENDMENT**
**42 U.S.C. §1983**
**(Plaintiff v. Allentown Defendants)**

336.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

337.   42 U.S.C. §1983 (Section "1983") provides:

> "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

338.   Mr. Barkley is a citizen of the United States and Defendants Chief Morris, Officer Busch, Officer Wittman and the APDoes to this claim are persons for purposes of Section 1983.

339.   At all times material hereto, Defendants Chief Morris, Officer Busch, Officer Wittman and the APDoes were acting under the color of state law in their various capacities as police officers and their acts or omissions were conducted within the scope of their official duties or employment.

340.    At all times material hereto, Mr. Barkley had a clearly established constitutional right to

be free from racial discrimination from law enforcement and/or police officers and to have the

freedom to enjoy equal protection of the laws.

341.    42 U.S.C. § 1981("Section 1981") provides:

> "(a) All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be parties,
> give evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other."

342.    Mr. Barkley, as an African American is a member of a protected class, and thus also had

the clearly established statutory right under this provision of 42 U.S.C. § 1981 to be free from

racially motivated beatings, arrests, searches, filing of false charges and malicious prosecution.

343.    Any reasonable police officer knew or should have known of these rights at the time of

the subject matter incidents.

344.    Mr. Barkley's race was a motivating factor in the decisions, acts and omissions of

Defendants.

345.    Defendants' conduct was undertaken with the purpose of depriving Mr. Barkley of his

federally protected rights.

346.    Defendants engaged in the conduct as averred and more fully described above as willful,

malicious and said conduct was facilitated in bad faith with reckless disregard of Mr. Barkley's

federally protected rights.

347.    Retaliatory animus for Mr. Barkley's exercise of his constitutionally protected right to

question a LANTA Security Officer and/or Allentown Police Officers regarding the scope of

their legal authority to remove him from the Rosa Parks seat on the bus and/or to search his

pockets for his bus pass was a substantially motivating factor in the excessive force used by individual Defendants and for false charges being filed against him.

348.   Defendants used excessive physical and mechanical (taser) force as a means of retaliation for Mr. Barkley's use of protected speech.

349.   The excessive force used against Mr. Barkley would deter a person of ordinary firmness from continuing to engage in the protected conduct.

350.   None of the Defendants took reasonable steps to: (1) protect Mr. Barkley from retaliation for his protected speech; and/or (2) take into consideration and/or protect exculpatory evidence which would have exonerated Mr. Barkley from being falsely charged and maliciously prosecuted.

351.   Defendants are each liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer.

352.   Defendants Officer Wittman and/or Officer Busch and/or the APDoes acted in concert in intentionally depriving Mr. Barkley of his constitutional rights.

353.   The conduct, acts or omissions of Defendants Officer Wittman and/or Officer Busch and/or the APDoes caused Mr. Barkley to endure bodily injury and sustain damages.

354.   The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes intentionally deprived Mr. Barkley of his constitutional rights.

355.   Officer Wittman and/or Officer Busch and/or the APDoes are liable for their personal involvement in the commission of the unjustifiable and unlawful acts against Mr. Barkley and are not entitled to qualified immunity.

356.    As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes 1-10, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### COUNT NINETEEN (XIX)
### MALICIOUS PROSECUTION IN VIOLATION OF
### FOURTH AND FOURTEENTH AMENDMENTS
### 42 U.S.C. §1983
### (Plaintiff v. Allentown Defendants)

357.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

358.    Mr. Barkley is a citizen of the United States and Defendants Chief Morris, Officer Busch, Officer Wittman and the APDoes to this claim are persons for purposes of 42 U.S.C. § 1983.

359.    At all times material hereto, Defendants Chief Morris, Officer Busch, Officer Wittman, and the APDoes were acting under the color of state law in their various capacities as police officers and their acts or omissions were conducted within the scope of their official duties or employment.

360.    At all times material hereto, Mr. Barkley had the clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

361.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

362.     Defendants Chief Morris, Officer Busch, Officer Wittman and the APDoes worked in concert to violate Mr. Barkley's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process by:

      a.  disregarding a crucial witness statement from another passenger on the bus;

      b.  concealing and/or destroying Mr. Barkley's All-Day Bus Pass;

      c.  filing false criminal charges against Mr. Barkley;

      d.  conducting the First Malicious and Wrongful Prosecution against Mr. Barkley;

      e.  refiling a false criminal charge against Mr. Barkley; and

      f.  conducting the Second Malicious and Wrongful Prosecution against Mr. Barkley.

363.     Defendants engaged in the conduct as averred and more fully described above as willful, malicious and said conduct was facilitated in bad faith with reckless disregard of Mr. Barkley's federally protected rights.

364.     As a result of Defendants' conduct, Mr. Barkley was unlawfully confined and prosecuted.

365.     Defendants conspired and/or acted in concert to institute, procure and continue criminal proceedings without justification against Mr. Barkley.

366.      The procurement of prosecution against Mr. Barkley premised on the false allegations of theft of services (criminal freeloading) was malicious, shocking, and objectively unreasonable given the operative circumstances.

367.     As averred above, both of the criminal proceedings terminated in Mr. Barkley's favor without any compromise.

368.     The acts or omissions of Defendants were moving forces behind Plaintiff's injuries and damages.

369.    Defendants are each liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer.

370.    Defendants Officer Wittman and/or Officer Busch and/or the APDoes acted in concert in intentionally depriving Mr. Barkley of his constitutional rights.

371.    The conduct, acts or omissions of Defendants Officer Wittman and/or Officer Busch and/or the APDoes caused Mr. Barkley to endure bodily injury and sustain damages.

372.    The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes intentionally deprived Mr. Barkley of his constitutional rights.

373.    Officer Wittman and/or Officer Busch and/or the APDoes are liable for their personal involvement in the commission of the unjustifiable and unlawful acts against Mr. Barkley and are not entitled to qualified immunity.

374.     As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

375.    As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes 1-10, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWENTY (XX)**
**FAILURE TO INTERVENE**
**IN VIOLATION OF**
**42 U.S.C. §1983**

**(Plaintiff v. Allentown Defendants)**

376.   Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

377.   Defendants are liable for failing to intervene to prevent the physical and mechanical (taser) assaults which were made upon Mr. Barkley which resulted in violations of his federally protected constitutional rights.

378.   Defendants are also liable for failing to intervene to prevent the destruction of Mr. Barkley's All-Day Bus Pass (exculpatory evidence) which resulted in violations of his federally protected constitutional rights.

379.   42 U.S.C. § 1983 provides that:

> "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

380.   Regardless of each Defendants' affirmative actions or omissions manifested towards Plaintiff, each Defendant had an absolute duty to intervene, including the duty to intervene to prevent the use of excessive force upon Mr. Barkley.

381.   Each of the Defendants had both a realistic and reasonable opportunity to intervene, however, failed to do so.

382.   Defendants Officer Wittman and/or Officer Busch and/or the APDoes acted in concert in intentionally depriving Mr. Barkley of his constitutional rights.

383.   The conduct, acts or omissions of Defendants Officer Wittman and/or Officer Busch and/or the APDoes caused Mr. Barkley to endure bodily injury and sustain damages.

384.     The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes intentionally deprived Mr. Barkley of his constitutional rights.

385.     Officer Wittman and/or Officer Busch and/or the APDoes are liable for their personal involvement in the commission of the unjustifiable and unlawful acts against Mr. Barkley and are not entitled to qualified immunity.

386.      As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

387.     As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWENTY-ONE (XXI)**
**FALSE ARREST & IMPRISONMENT**
**IN VIOLAITON OF 42 U.S.C. §1983**
**(Plaintiff v. Allentown Defendants)**

388.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

389.     The Allentown Defendants either individually, or acting in concert, subjected Mr. Barkley to false arrest and imprisonment in violation of his constitutionally protected rights.

390.     On the date of the incident, without probable cause, the Allentown Defendants willfully arrested and, thereafter, deliberately further detained Mr. Barkley in custody.

391.    Mr. Barkley's arrest was unlawful because it lacked probable cause.

392.    The operative facts and circumstances, which were within the knowledge of the Allentown Defendants at all times material hereto, would not lead a reasonable person to believe that Mr. Barkley had committed a crime for which detainment and/or arrest would be warranted and/or legally justifiable.

393.    As a result of being subjected to false arrest and imprisonment, in violation of his Constitutionally protected rights under the Fourth Amendment, Mr. Barkley suffered damages.

394.    As averred and more fully described above, Mr. Barkley was imprisoned for approximately 11 hours.

395.    Defendants Officer Wittman and/or Officer Busch and/or the APDoes acted in concert in intentionally depriving Mr. Barkley of his constitutional rights.

396.    The conduct, acts or omissions of Defendants Officer Wittman and/or Officer Busch and/or the APDoes caused Mr. Barkley to endure bodily injury and sustain damages.

397.    The conduct, acts or omissions of Officer Wittman and/or Officer Busch and/or the APDoes intentionally deprived Mr. Barkley of his constitutional rights.

398.    Officer Wittman and/or Officer Busch and/or the APDoes are liable for their personal involvement in the commission of the unjustifiable and unlawful acts against Mr. Barkley and are not entitled to qualified immunity.

399.     As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

400.    As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### COUNT TWENTY-TWO (XXII)
### VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS
### 42 U.S.C. §1983
### (Plaintiff v. Allentown Defendants)

401.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

402.    As averred and more fully described above, Officer Wittman, Officer Busch and the APDoes, acting under color of law and within the scope of their employment, falsely asserted criminal charges against Mr. Barkley, in violation of his rights secured by the Fourteenth Amendment.

403.    Officer Wittman pursued a theft of services criminal charge even after watching surveillance video which unequivocally showed the All-Day Bus Pass and Mr. Barkley use thereof.

404.    Most egregiously, however, Officer Wittman pursued a theft of services criminal charge despite Officer Busch concealing and/or destroying Mr. Barkley's All-Day Bus Pass.

405.    As averred and more fully described above, these false criminal charges lead to Mr. Barkley being arrested, imprisoned, and prosecuted at 2 separate and distinct criminal proceedings.

406.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Barkley clear innocence.

407.    As a direct and proximate result of the constitutional violations, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWENTY-THREE (XXIII)**
**CIVIL CONSPIRACY**
**IN VIOLATION OF**
**42 U.S.C. §1983**
**(Plaintiff v. Allentown Defendants)**

408.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

409.    42 U.S.C. §1983:

> "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

410.    Defendants Officer Wittman, Officer Busch and the APDoes participated in a conspiracy to violate the Plaintiff's Constitutional rights.

411.    On the date of incident, Defendants Officer Wittman, Officer Busch and the APDoes were all present and jointly committing unconstitutional physical and mechanical (taser) assaults upon Mr. Barkley.  At no time material hereto, did any if these Defendants caution, intervene, restrain or even attempt to prevent the other from actively participating in the wrongdoings against Mr. Barkley despite their being reasonable and ample opportunity to do so.

412.    At all times material hereto, from inside to outside of the bus, Defendants Officer Wittman, Officer Busch and the APDoes acted fully in concert with common plan, scheme, design and agreement how the use of the excessive force would take place coupled with the concealment and/or destruction of exculpatory evidence (destruction of Mr. Barkley's All-Day Bus Pass).

413.    As averred above and as evidence by the surveillance video, Defendants Officer Wittman, Officer Busch and the APDoes agreed thereafter to fabricate, and did fabricate, a continued story wherein they either falsely depicted Mr. Barkley as thief and/or disruptive freeloader.

414.    The intended purpose of these fabrications was an attempt to excuse or otherwise justify and cover-up their unlawful use of excessive physical and mechanical (taser) force upon Mr. Barkley, in violation of his constitutional rights.

415.    As a direct and proximate result of this civil conspiracy, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

        WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief,

including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWENTY-FOUR (XXIV)**
**SUPERVISOR/POLICYMAKER LIABILITY**
**42 U.S.C. §1983**
**(Plaintiff v. City of Allentown, Pawlowski and Morris)**

416.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

417.    At all times material hereto, Mayor Pawlowski and Chief Morris actively participated in policymaking and supervisory roles in the Allentown Police Department.

418.    At all times material hereto, Mayor Pawlowski retained ultimate responsibility over the operations of the Allentown Police Department.

419.    At all times material hereto, Chief Morris supervised and monitored the day-to-day operations of the Allentown Police Department.

420.    As evidenced by the injuries suffered and the damages sustained by Mr. Barkley at the hands of Allentown Police Officers, it is apparent that Mayor Pawlowski and Chief Morris, implemented law enforcement policies and practices which having a higher risk of constitutional violations when carried out by members of their own police force.

421.    Both Mayor Pawlowski and Chief Morris disregarded the existence of patterned constitutional deviations which pre-existed prior to the date of incident, including but not limited the constitutional violations manifested by Officer Busch on prior occasions.  In fact, the joint disregard manifested by Mayor Pawlowski and Chief Morris relating to Officer Busch's propensity to commit constitutional violations spoke for itself on August 18, 2016 as evidenced by his heinous destruction of exculpatory evidence.

422.    The inadequate policies and practices of the Allentown Police Department which existed on August 18, 2016 created an unreasonable risk of injury to Mr. Barkley, an African American patron within the City of Allentown.

423.    As noted above, both Mayor Pawlowski and Chief Morris had knowledge of the risk of constitutional violations due to their apparent nature coupled with the specific conducted previously manifested by Officer Busch which had widespread public knowledge throughout the City of Allentown.

424.    Despite their knowledge, Mayor Pawlowski and Chief were deliberately indifferent to the risk of constitutional violations given the lack of punish, penalty, demotion, reassignment, suspension and/or termination of police officers who had committed constitutional violations.

425.    As a direct and proximate result of their improper policymaking and/or insufficient supervision of the Allentown Police Department, Mr. Barkley suffered injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski and Morris, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWENTY-FIVE (XV)**
**42 U.S.C. § 1983**
***Monell* Policy Claims**
**(Plaintiff v. City of Allentown)**

426.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

427.    The actions of the Defendant Police Officers were undertaken under policies and practices of the City of Allentown which were ratified by policymakers for the City with final policymaking authority, including but not limited to the inadequate implementation and insufficient supervisory roles of Mayor Pawlowski and Chief Morris. These policies and practices included the failure to adequately train, supervise, and discipline officers who engaged in the alleged constitutional violations.

428.    The policies and practices described in this Count were maintained and implemented by the City of Allentown with deliberate indifference to Mr. Barkley's constitutional rights.

429.    As a direct and proximate result of the City of Allentown's actions, the constitutional rights of Mr. Barkley were violated and he suffered injuries and damages, as averred herein and as described more fully above.

430.    The City of Allentown is therefore liable for the misconduct committed by its Defendant Officers.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWENTY-SIX (XXVI)**
**DELIBERATELY INDIFFERENT POLICIES,**
**PRACTICES, CUSTOMS, TRAINING, AND**
**SUPERVISION IN VIOLATION OF THE FOURTH,**
**FOURTEENTH, AND FIRST AMENDMENTS**
**42 U.S.C. §1981**
**(Plaintiff v. City of Allentown, Pawlowski, Morris and LANTA)**

431.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

432.    As averred above, the City of Allentown, Mayor Pawlowski and Chief Morris, at all times relevant, were policymakers for the City and the Allentown Police Department, and in that capacity established policies, procedures, customs, and/or practices for the same.

433.    LANTA, at all times relevant, was the policymaker for its bus drivers, security officers and its buses, and in that capacity established policies, procedures, customs, and/or practices for its patrons; the public bus passenger.

434.    These Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Mr. Barkley's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

435.    The City of Allentown, Mayor Pawlowski and Chief Morris created and tolerated an atmosphere of lawlessness and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Mr. Barkley and of the public.

436.    Given the duties and responsibilities of Allentown Police Officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

437.    Given the duties and responsibilities of LANTA bus driver and security officers who serve the public on a daily basis, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

438.    Plaintiff is informed and believes that since the date of incident (August 18, 2016), LANTA: (1) now requires its bus drivers to close the doors of the bus when parked at the ATC; and (2) intends to switch to swipe-card system to collect fares.

439.    The deliberately indifferent training and supervision provided by the City of Allentown, Mayor Pawlowski and Chief Morris resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to these Defendants and were moving forces in the constitutional and federal violations, bodily injuries and damages sustained by Mr. Barkley on the date of incident.

440.    The deliberately indifferent training and supervision provided by LANTA resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to this Defendant and were moving forces in the constitutional and federal violations, bodily injuries and damages sustained by Mr. Barkley on the date of incident.

441.    As a direct and proximate result of the deliberate indifference of these Defendants, the constitutional rights of Mr. Barkley were violated and he suffered injuries and damages, as averred herein and as described more fully above.

        WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris and LANTA, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern

District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### COUNT TWENTY-SEVEN (XXVII)
### MUNICIPAL LIABILTY
### 42 U.S.C. §1981
### (Plaintiff v. City of Allentown and LANTA)

442.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

443.    As averred and more fully described in the preceding Count of the Complaint, the City of Allentown and LANTA, in their respective capacities and forums, developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Mr. Barkley's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives

444.    The constitutional violations, bodily injuries, damages sustained by Mr. Barkley as well as the conduct manifested by the individual LANTA and Allentown Defendants was directly and proximately caused by the acts and/or omissions of the City of Allentown and LANTA, which have encouraged, facilitated, tolerated and have been deliberately indifferent to their inadequate polices and insufficient supervision of their subordinates.

445.    As a direct and proximate result of the deliberate indifference of these Defendants, the constitutional rights of Mr. Barkley were violated and he suffered injuries and damages, as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown and LANTA, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper

### COUNT TWENTY-EIGHT (XXVIII)
### STATE LAW CLAIM
### ASSAULT AND BATTERY
### (Plaintiff v. Allentown Defendants)

446.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

447.    At all times material hereto, Officer Wittman, Officer Busch and the APDoes were agents and employees of the City of Allentown.

448.    Officer Wittman, Officer Busch and the APDoes intentionally assaulted and battered Mr. Barkley on the date of incident.

449.    As a result of Defendants' assault and battery, Plaintiff suffered the damages stated herein.

450.    As a direct and proximate result of Defendants' assault and battery, Mr. Barkley suffered bodily injuries and damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against City of Allentown, Pawlowski, Morris, Busch, Wittman, APDoes, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief,

including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT TWENTY-NINE (XXIX)**
**STATE LAW CLAIM**
**MALICIOUS PROSECUTION**
**(Plaintiff v. All Defendants)**

451.    At all times material hereto, Officer Wittman, Officer Busch and the APDoes were agents and employees of the City of Allentown.

452.    Defendants violated Mr. Barkley's rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to destroy his LANTA Day Pass which would have exonerated him from any assertions or allegations relating to criminally freeloading.

453.    Defendants violated Mr. Barkley's rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to secure false charges against him, resulting in his unlawful confinement and prosecution.

454.    Defendants conspired and/or acted in concert to institute, procure and continue criminal proceedings without justification against Mr. Barkley.

455.    Defendants engaged in the conduct as averred and more fully described above as willful, malicious and said conduct was facilitated in bad faith with reckless disregard of Mr. Barkley's rights.

456.     The procurement of prosecution against Mr. Barkley for the known to be false allegations of criminally freeloading and resisting arrest were malicious, shocking, and objectively unreasonable in the light of the circumstances.

457.    Mr. Barkley was prosecuted at two separate and distinct criminal proceedings where Officer Wittman served as prosecutor, affiant, arresting officer and witness.

458.   On 12/6/16, a hearing was held before the Honorable Karen C. Devine relating to the first three criminal charges.

459.   Subsequent to this criminal hearing, which included the testimony of both Officer Wittman and the Bus Driver ("Betzler"), Judge Devine dismissed all of the criminal charges which had been falsely asserted against Mr. Barkley.

460.   Despite Judge Devine's determination at the conclusion of the hearing, a representative for LANTA was publicly adamant that Mr. Barkley had to be charged and convicted with a crime relating to the date of the incident.

461.   On 12/21/16, despite Judge Devine's determination, Officer Wittman refiled criminal charges against Mr. Barkley based on the same set of operative facts.  In doing so, Officer Wittman charged Mr. Barkley with 18 §5503 §§ A4, Grade S, "Disorder Conduct Hazardous/Physi Off."

462.   On 4/28/17, a summary trial was held before the Honorable David M. Howells Jr. which included the testimony of Officer Wittman, the arresting officer and affiant.

463.   Subsequent to the summary trial, Judge Howells found Mr. Barkley not guilty of the criminal charge asserted him.

464.   As averred above, both criminal proceedings resulted in Mr. Barkley's favor.

465.   As a direct and proximate result of the malicious prosecutions, Mr. Barkley suffered damages as averred herein and as described more fully above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania,

together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

**COUNT THIRTY (XXX)**
**STATE LAW CLAIM**
**RESPONDEAT SUPERIOR**
**(Plaintiff v. All Defendants)**

466.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

467.    In committing the acts alleged in the preceding paragraphs of the Complaint, Defendants Bus Driver and LANTA Security Officer were employees and/or agents of LANTA, acting at all relevant times within the scope of their employment.

468.    Defendant LANTA is liable as principal for all torts committed by its employees and/or agents.

469.    In committing the acts alleged in the preceding paragraphs of the Complaint, Defendants Officer Wittman, Officer Busch, APDoes, Chief Morris and Mayor Pawlowski were employees and/or agents of the City of Allentown, acting at all relevant times within the scope of their employment and under color of law.

470.    Defendant City of Allentown is liable as principal for all torts committed by its employees and/or agents

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper

### COUNT THIRTY-ONE (XXXI)
### STATE LAW CLAIM
### INDEMNIFICATION
### (Plaintiff v. All Defendants)

471.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of the Complaint as if fully set forth herein.

472.    Pennsylvania law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

473.    Defendants Officer Wittman, Officer Busch, APDoes, Chief Morris and Mayor Pawlowski were employees of the City of Allentown, who acted within the scope of their employment in committing the misconduct described herein.

474.    Defendants Bus Driver and LANTA Security Officer were employees of LANTA, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against All Defendants, jointly and severally, in an amount in excess of the $150,000.00 arbitration limit for the United States District Court for the Eastern District of Pennsylvania, together with punitive damages, and other relief, including costs of suit, reasonable attorney and expert fees as well as all such further relief as this Honorable Court deems just and proper.

### **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

KOTSATOS LAW, PLLC

Date: 05/18/17

By: _____
John G. Kotsatos, Esquire
PA Identification No.: 92807
Kotsatos Law, PLLC
717 Washington St.
Easton, PA 18042
Phone: 484-403-6214
Fax: 610-438-6351
Email: jk@lawjek.com

Mark Louis Minotti, Esquire
PA Identification No.: 063984
717 Washington St.
Easton, PA 18042
Phone: 610-258-0455
Fax: 610-438-6351
Email: info@minottilawoffices.com

88